WAYNE COUNTY v STATE TREASURER

Docket Nos. 50415, 50416. Submitted November 14, 1980, at Detroit. —Decided April 9, 1981. Leave to appeal applied for.

Wayne County brought an action in the Court of Appeals against the State Treasurer and the Department of Treasury for mandamus to compel the distribution of revenues collected under the Single Business Tax Act. The department refused to disburse the funds, claiming that the county owed the state an amount as its proportionate share of the mental health costs for its residents. The county admitted owing something but disputed the amount. *Held:*

The State Treasurer has a mandatory and nondiscretionary duty to distribute to a county its proportionate share of the single business tax collected by the state. Where the State Treasurer refuses to distribute a share to a county, the county may properly seek mandamus in the Court of Appeals. The State Treasurer has no right to set off claims by the state for amounts due from a county for its share of the mental health care costs of its citizens against the county's share of the single business tax revenue where the amount due the state has not been judicially determined and is in dispute.

Mandamus issued.

1. MANDAMUS — REMEDIES.

Mandamus lies where there exists a clear legal duty, usually ministerial, incumbent upon the defendant and a clear legal right in the plaintiff to the discharge of that duty.

2. TAXATION — SINGLE BUSINESS TAX — COUNTIES — REMEDIES — MANDAMUS.

The State Treasurer has a mandatory and nondiscretionary duty to distribute to a county its proportionate share of the single business tax collected by the state; where the State Treasurer refuses to distribute a share to a county, the county may properly seek mandamus in the Court of Appeals.

REFERENCES FOR POINTS IN HEADNOTES
[1, 2] 52 Am Jur 2d, Mandamus §§ 72, 73, 80.
[3] 20 Am Jur 2d, Counterclaim, Recoupment, and Setoff §§ 112, 133.

3. TAXATION — SINGLE BUSINESS TAX — COUNTIES — SETOFFS.

The State Treasurer has no right to set off claims by the state for amounts due from a county for its share of the mental health care costs of its citizens against the county's share of the single business tax revenue where the amount due the state has not been judicially determined and is in dispute.

*George H. Cross,* Corporation Counsel, and *Robert G. Schuch,* Assistant Corporation Counsel, for plaintiff.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Milton I. Firestone* and *Regina Ann King,* Assistants Attorney General, for defendants.

Before: BRONSON, P.J., and J. H. GILLIS and CYNAR, JJ.

BRONSON, P.J. This is an original action for mandamus to compel the State Treasurer to distribute revenues collected and due under the Single Business Tax Act. MCL 208.1 *et seq.;* MSA 7.558(1) *et seq.* Plaintiff alleged that the amount of $11,856,233.90 became due it on February 1, 1980, and that the Department of Treasury refused to make the payment, claiming that plaintiff owed the state $7,917,363.19 as of April, 1979. According to defendants, this amount represented plaintiff's unpaid proportionate share of mental health care costs for its residents as provided by MCL 330.1302; MSA 14.800(302) and MCL 330.1304; MSA 14.800(304).[1]

[1] Originally, two separate actions for mandamus were initiated by plaintiff. The second action involved defendants' and others' withholding of revenues due plaintiff pursuant to the Revenue Sharing Act of 1971. MCL 141.901 *et seq.;* MSA 5.3194(401) *et seq.* This action was dismissed by order of this Court on motion by the parties. Originally, the case at bar also involved $372,032.16 withheld by the Treasury Department as a setoff for funds plaintiff allegedly owed the Department of Social Services. However, this portion of the case was also dismissed by order of this Court on motion by the parties.

Plaintiff contends that on numerous occasions it has complained to the Department of Mental Health concerning the accuracy of its residency determinations and billing amounts. Although plaintiff claims to have appropriated funds for the payment of its mental health care obligations, it refuses to pay until it receives a satisfactory accounting determining its liability.

The issue which we must resolve is whether plaintiff is entitled to a writ of mandamus compelling defendants to make payment of the withheld funds. Generally, mandamus lies only where there exists a clear legal duty incumbent upon the defendant and a clear legal right in the plaintiff to the discharge of such duty. The legal duty must usually be a specific act of a ministerial nature, although occasionally mandamus will lie though the act sought to be compelled is discretionary. *Campbell v Judges' Retirement Board,* 378 Mich 169, 182-183; 143 NW2d 755 (1966), *Board of County Road Comm'rs of the County of Oakland v State Highway Comm,* 79 Mich App 505, 508-509; 261 NW2d 329 (1977), *lv den* 402 Mich 907 (1978). The State Treasurer, as a state officer, is subject to a mandamus action initiated in the Court of Appeals. *Deneweth v State Treasurer,* 32 Mich App 439; 189 NW2d 10 (1971), *aff'd* 385 Mich 762 (1971).

Plaintiff relies on MCL 208.135; MSA 7.558(135) for the proposition that defendants have no discretion to withhold payments collected under the Single Business Tax Act. This provision provides:

"The department of treasury shall pay to each county by February 1 of each year, following the year the amount was calculated, an amount of money equal to the product of the state equalized value based upon inventory as certified by the department of treasury

under § 132 times the county property tax rate for the county as reported to the department of treasury under § 138. The payments shall begin in 1977 for the previous year."

The use of the word "shall" in a statute connotes a mandatory duty or requirement. *Twp of Southfield v Drainage Board for Twelve Towns Relief Drains,* 357 Mich 59, 76; 97 NW2d 821 (1959), *Sears v Dep't of Treasury,* 57 Mich App 218, 224; 226 NW2d 63 (1974). See, also, OAG 5206, p 183 (August 4, 1977), interpreting a companion section of the Single Business Tax Act and finding that the Department of Treasury must make the required payments and has no authority to delay them.

Defendants' argument that the State Treasurer has the authority to set off single business tax revenues against amounts allegedly due the state also rests on statutory authority:

"The auditor general [now the state treasurer] shall state all accounts, and examine and liquidate the claims of all persons against the state, in cases provided for by law, and give his warrant therefor * * *." MCL 13.17; MSA 3.121.

"He shall also examine, adjust and settle the claims of all persons indebted to the state; and when there shall be any account liquidated, showing any amount to be due to any person, for the payment whereof an appropriation shall have been made by law, he shall draw his warrant on the treasurer therefor." MCL 13.18; MSA 3.122.

"No moneys shall be paid out of the state treasury, except on the warrant of the auditor general; and all receipts for money paid to the treasurer, shall be taken to the auditor general, who shall countersign the same, and enter them in the proper book in his office for that purpose, to the credit of the person by whom such payment shall be made, and no such receipt, unless

countersigned, shall be evidence of such payment." MCL 13.19; MSA 3.123.

Defendants contend that the above statutory provisions implicitly empower the State Treasurer to exercise discretion in the disbursement of funds to protect the various accounts of the state by setting off amounts due the state against amounts owed the state.

This same type of administrative setoff, based on implied powers from specific statutory provisions, was attempted in *Castro v Goemaere,* 53 Mich App 78; 218 NW2d 395 (1974), by the Secretary of State. There, Castro was injured in an accident with an uninsured motorist and sought damages from the motor vehicle accident claims fund. Subsequently, Castro, also an uninsured motorist, injured another driver in an automobile accident. The Secretary of State paid the judgment against Castro and informed him that his claim against the fund was being set off in the amount of the judgment against him. This Court refused to allow the setoff, noting provisions in the Motor Vehicle Accident Claims Act which required the Secretary of State to make the payments by use of the word "shall". MCL 257.1107(1); MSA 9.2807(1) and MCL 257.1119; MSA 9.2819. The *Castro* Court also noted that the Legislature had explicitly empowered other administrative agencies to set off competing claims, while no such authority was extended to the Secretary of State. *Id.,* 82, fn 4. The Single Business Tax Act provides no right of setoff in the State Treasurer. In accord, *Smith v Lloyd,* 56 Mich App 576; 224 NW2d 670 (1974).

Defendants contend that *Castro* and *Smith* are no longer viable precedent in light of *Secretary of State v Greco,* 85 Mich App 498; 271 NW2d 291 (1978), *lv den* 405 Mich 819 (1979). In *Greco,* this

Court allowed the Secretary of State to compel a judicial setoff of competing claims by proceeding via a writ of garnishment against the State Treasurer where an uninsured motorist on whose behalf the claims fund had paid a judgment subsequently obtained a judgment against another uninsured motorist which the claims fund was obligated to pay. In *Greco,* both the claim by Greco and against Greco had been reduced to sums certain via judgments.

Defendants' reliance on *Greco* is misplaced. The key to that decision is that the Secretary of State *did not* administratively set off the competing judgments but, rather, sought a judicial setoff. Clearly, if defendants received a judgment against plaintiff specifying a sum certain as due for its aliquot share of mental health care costs—whether by consent or otherwise—they would be entitled to set off the claims. This is not the case, however. Plaintiff disputes the amount of its indebtedness to the state as its share of mental health costs for its residents, and the State Treasurer has never sought to have judicially determined the actual amount due.

Defendants also rely on *Sumeracki v Stack,* 269 Mich 169; 256 NW 843 (1934), in which the Supreme Court refused to issue a writ of mandamus to compel the Auditor General to pay over to Wayne County certain motor vehicle weight and gasoline taxes. *Sumeracki* involved circumstances in which both the State of Michigan and County of Wayne were collecting tax revenues for the other. It was undisputed that the state owed Wayne County $5,104,971.05 for motor vehicle weight taxes and gasoline taxes in the hands of the State Treasurer. However, it was also undisputed that Wayne County had collected and converted to its

own use $6,503,841.46 in taxes it had collected on behalf of the state. The *Sumeracki* holding was premised upon statutory provisions now set forth in MCL 211.87; MSA 7.141, which provided that accounts between the state and counties shall be adjusted on the basis of crediting and paying to each the taxes collected by and for each. Defendants do not deny the Court's reliance on the statutory provisions. Instead, they point to the following language appearing in *Sumeracki* suggesting that equitable considerations were also important to the holding:

"Wayne county, having collected and converted to its own use and benefit $6,503,841.46 belonging to the State, that being an amount of money in excess of the amount owing by the State to the county of Wayne, ought not to be permitted to compel the State to pay over the $5,104,971.05 in the State treasury derived from motor vehicle weight taxes and gasoline taxes collected when the county has already collected, appropriated and expended State money in excess of the amount owing by the State to the county." *Id.,* 173.

Whatever importance equitable considerations had in *Sumeracki,* the equities in the instant case are different than those in *Sumeracki.* It would undoubtedly be inequitable to allow a county to compel the state to pay over funds where it is undisputed that the county is indebted to the state for a sum in excess of that claimed to be due. This is not the situation here, however. While Wayne County does not dispute that it owes the state something for mental health care costs, the actual amount due is very much in issue.

Moreover, unlike *Sumeracki,* in the instant case plaintiff avers that it has appropriated funds for payment of its share of mental health care costs and merely refuses to pay until a proper account-

ing can be rendered. In *Sumeracki,* there is no suggestion that the county ever intended to pay the state the money it had collected on its behalf.

A clear legal duty to distribute the Single Business Tax Act revenues to plaintiff exists on the facts of this case. The statutory language of the Single Business Tax Act is mandatory and nondiscretionary. Given that the amount owed the state for its mental health care obligations has not been reduced to a sum certain, we find a clear legal right in plaintiff to payment of the single business tax funds concededly due.[2]

We do not address the issue of whether the State Treasurer's duty to distribute these revenues would be eviscerated had plaintiff conceded it owed the state a sum certain for mental health care costs. In this situation it is conceivable that, despite the absence of any specific statutory authority in the State Treasurer to set off claims, we might find no clear legal right in plaintiff to the discharge of the duty. As noted, *supra,* both a legal duty incumbent on defendant *and* a clear legal right in plaintiff to the discharge of the duty are prerequisites to the issuance of a writ of mandamus.

We still must determine whether plaintiff is without an adequate remedy at law. If not, mandamus is an appropriate remedy. *Coffin v Board of Education of Detroit,* 114 Mich 342, 345; 72 NW 156 (1897), *Board of County Road Comm'rs of the County of Oakland v State Highway Comm, supra.*

Defendants contend that the writ should not be

---

[2] The importance of an orderly flow of tax revenues cannot be overemphasized. In the plaintiff's words:

"Tax revenues are the lifeblood of government. Without a sytstem of timely collection and distribution, a government will cease to function. Accordingly, the Courts have consistently compelled the collector of the tax to distribute it to its beneficiary."

issued because plaintiff could have brought an action in the Court of Claims pursuant to MCL 600.6419; MSA 27A.6419. The Court of Claims has exclusive jurisdiction to entertain all claims *ex contractu* and *ex delicto,* that is, arising out of a contract with the state or a tort committed by the state. Plaintiff's action is neither *ex contractu* nor *ex delicto.* Although broad language to the effect that the Court of Claims has exclusive jurisdiction in all suits against public officials acting in their official capacities appears in *Grunow v Sanders,* 84 Mich App 578, 581; 269 NW2d 683 (1978), *lv den* 405 Mich 835 (1979), it must be borne in mind that *Grunow* actually involved a claim *ex delicto.* Moreover, if the broad language of *Grunow* is taken literally, the effect would be that an action for mandamus could never be brought against an officer in this Court. Yet GCR 1963, 714.1(1) states that "all actions for mandamus against a state officer shall be brought in the Court of Appeals". Assuming, *arguendo,* that the Court of Claims had jurisdiction to hear this case, plaintiff would not be seeking another remedy, but merely a different route to the same remedy.

The writ of mandamus is issued. No costs, a public question being involved.