## HEYLER v DIXON

Docket Nos. 88169, 88268. Submitted January 13, 1987, at Detroit. Decided May 8, 1987. Leave to appeal denied, 428 Mich —.

On February 10, 1980, at approximately 2:18 A.M., Larry Dixon, driving a vehicle belonging to his father, Paul Dixon, westbound on Van Born Road in Dearborn Heights, lost control of the car and hit a post. There were no other vehicles involved in the accident. Barbara Ann Heyler, age twenty-two, a passenger in the vehicle, was killed as a result of injuries she sustained in the accident. Barbara was the live-in girlfriend of Dixon and they had a daughter, Stacy Ann Heyler, age two, who lived with them. Barbara drove Larry to the Confetti Lounge about noon on February 9, 1980, and left him there. About 9:00 P.M. Barbara drove back to the Confetti Lounge where she joined Larry and several friends. Barbara had nothing to drink but from time to time Larry drank beer which was served to him. Larry and Barbara left the Confetti Lounge at approximately 2:10 A.M., February 10, 1980, and proceeded westerly on Van Born Road with Larry driving and Barbara sitting in the front seat beside him. The accident occurred at approximately 2:18 A.M. On May 7, 1980, Harold Heyler, personal representative of his daughter, Barbara Heyler, filed in the Wayne Circuit Court a dramshop action for wrongful death against Larry Dixon,

REFERENCES

Am Jur 2d, Death § 275.

Am Jur 2d, Evidence §§ 265, 1091.

Am Jur 2d, Expert and Opinion Evidence §§ 24, 25, 33-35, 101.

Am Jur 2d, Intoxicating Liquors §§ 561-614.

Am Jur 2d, Trial §§ 469 et seq.

Construction and application of Rule 701 of Federal Rules of Evidence, providing for opinion testimony by lay witnesses under certain circumstances. 44 ALR Fed 919.

Tavernkeeper's liability to patron for third person's assault. 43 ALR4th 281.

Comparative negligence rule where misconduct of three or more persons is involved. 8 ALR3d 722.

Recovery of prejudgment interest on wrongful death damages. 96 ALR2d 1104.

Settlement with or release of person directly liable for injury or death as releasing liability under civil damage act. 78 ALR2d 998.

driver, Paul Dixon, car owner, and John Stevens, doing business as the Confetti Lounge. The complaint alleged that decedent was killed in an automobile collision which was solely and proximately caused by the negligent driving of Larry Dixon, and that Larry Dixon was served intoxicating beverages at the Confetti Lounge while he was in a visibly intoxicated condition. On March 6, 1981, a settlement was reached with Larry Dixon and Paul Dixon. As part of the settlement, it was agreed that Larry Dixon would be retained as a nominal defendant in the action against defendant John Stevens in order to comply with the name and retain provision of the dramshop act. On September 28, 1982, the Michigan Supreme Court issued its opinion in *Putney v Haskins,* 414 Mich 181 (1982), stating that a case against a dramshop defendant must be dismissed if a settlement of any type has been entered into between the plaintiff and the allegedly intoxicated person. On October 19, 1982, defendant Stevens moved for summary judgment on the basis of the *Putney* decision. In response plaintiff moved to set aside the settlement agreement entered into March 6, 1981. On November 4, 1982, this case was taken off the docket and decision on the motions was held in abeyance pending ruling by the Supreme Court on whether *Putney* was applicable retroactively. On February 6, 1984, the Supreme Court ruled in *Tebo v Havlik,* 418 Mich 350 (1984), that its ruling in *Putney* would be prospective only, thereby saving plaintiff's cause of action against Stevens. However, in the interim period, the Chief Judge of the Wayne Circuit Court had taken all dramshop cases involving this issue off the trial docket. After the Supreme Court issued its opinion in *Tebo,* indicating that the *Putney* decision was to be given prospective application only, the instant case was returned to the trial docket and proceeded to trial. On November 20, 1984, the jury returned separate verdicts against Larry Dixon in the amount of $175,000 and against Stevens in the amount of $175,000. The jury also found the decedent to be fifteen percent comparatively negligent but only applied the fifteen percent to Larry Dixon and not to defendant Stevens. The court, Thomas J. Brennan, J., entered judgment against Stevens in the amount of $149,000 and denied prejudgment interest for the period of time the case was off the trial docket. Stevens appealed. Heyler appealed. The appeals were consolidated by the Court of Appeals.

The Court of Appeals *held:*

1. The question whether or not it was error to allow plaintiff to call Larry Dixon as a witness under the adverse party statute was not preserved for appeal by an objection. Further,

even if error, it was harmless, since his testimony was not inconsistent with substantial justice. It was also harmless that the court admitted a written statement signed by Larry Dixon.

2. The rule that an allegedly intoxicated person who is named as a defendant in a dramshop action against a tavern owner is not retained in the action within the meaning of the dramshop act where a settlement of any kind is reached between the plaintiff and the intoxicated person before the litigation is concluded by trial or settlement, that at the time a settlement is made between the plaintiff and the intoxicated person the action against the tavern owner must be dismissed, and that the fact that the allegedly intoxicated defendant continues as a nominal party and is not formally dismissed from the action is sufficient to satisfy the name and retain requirements of the act applies to actions where the settlement was entered into after September 28, 1982, the date the rule was announced by the Supreme Court. Thus, Stevens was not entitled to summary disposition for failure of the plaintiff to comply with the name and retain provision of the dramshop act.

3. The court did not err in denying defendant Stevens' motion for a directed verdict since there was evidence from which it could be inferred that Larry Dixon was served intoxicants at the Confetti Lounge while he was visibly intoxicated.

4. The court did not err in failing to limit the testimony of lay witnesses to their observations but allowing them to express their opinions as to whether Larry Dixon was visibly intoxicated.

5. The court did not err in limiting the scope of inquiry into the care and support of Stacy Ann Heyler, since her support was not an element of damages.

6. The trial court did not err in keeping the liability of each defendant separate rather than joint and several.

7. The court did not err in denying prejudgment interest for the period of time the case was removed from the trial docket.

8. The trial court did not err in applying comparative negligence to the verdict against both defendants.

Affirmed.

R. M. Maher, P.J., dissented in part. He would have held the liability of Dixon and Stevens to be joint and several. He would reverse in part.

1. Intoxicating Liquors — Dramshop Act — Name and Retain.

The rule that an allegedly intoxicated person who is named as a defendant in a dramshop action against a tavern owner is not

retained in the action within the meaning of the dramshop act where a settlement of any kind is reached between the plaintiff and the intoxicated person before the litigation is concluded by trial or settlement, that at the time a settlement is made between the plaintiff and the intoxicated person the action against the tavern owner must be dismissed, and that the fact that the allegedly intoxicated defendant continues as a nominal party and is not formally dismissed from the action is insufficient to satisfy the name and retain requirements of the act applies to actions where the settlement was entered into after September 28, 1982, the date the rule was announced by the Supreme Court (MCL 436.22; MSA 18.993).

2. INTOXICATING LIQUORS — DRAMSHOP ACT — ACTIONS.

In order to maintain an action under the dramshop act, a plaintiff must prove: (1) that plaintiff was injured or damaged by a visibly intoxicated person; (2) that the defendant unlawfully sold, gave or furnished intoxicating liquor to such person; (3) that such selling, giving or furnishing caused or contributed to the intoxication of such persons; and (4) that such selling, giving or furnishing was a proximate cause of the plaintiff's injury (SJI2d, § 11, Introduction, p 11-3).

3. APPEAL — DIRECTED VERDICT — JUDGMENT NOTWITHSTANDING THE VERDICT.

The standard of review applicable to a denial of a motion for a directed verdict is that review by the Court of Appeals is limited to whether the party opposing the motion offered evidence upon which reasonable minds could differ; the test is whether, viewing the facts in a light most favorable to the nonmoving party, reasonable persons could reach a different conclusion and, if so, the case is properly one for the jury; the nonmoving party must be given the benefit of every reasonable inference that can be drawn from the evidence.

4. INTOXICATING LIQUORS — VISIBLE INTOXICATION — EVIDENCE — DRAMSHOP ACT.

The mere fact that an alleged intoxicated tortfeasor drank alcoholic beverages is not sufficient to establish that he was visibly intoxicated for purposes of finding liability under the dramshop act; a person is visibly intoxicated when his or her intoxication would be apparent to an ordinary observer.

5. INTOXICATING LIQUORS — DRAMSHOP ACT — CIRCUMSTANTIAL EVIDENCE.

An action under the dramshop act may be proved by circumstantial evidence.

6. EVIDENCE — OPINION — LAY WITNESSES — RULES OF EVIDENCE.

A lay witness may testify in the form of opinions which are 1) rationally based on the perception of the witness and 2) helpful to a clear understanding of his testimony or the determination of a fact in issue (MRE 701).

7. INTEREST — JUDGMENTS — PREJUDGMENT INTEREST — DELAY.

A court may disallow prejudgment interest for periods of delay where the delay is caused through no fault of the debtor (MCL 600.6013; MSA 27A.6013).

8. INTOXICATING LIQUORS — DRAMSHOP ACT — DEFENSES — COMPARATIVE NEGLIGENCE.

Comparative negligence is a factual defense which is available to dramshop defendants as well as to intoxicated driver defendants where the facts support it.

*Law Offices of John W. Mason, P.C.* (by *John W. Mason*), for plaintiff.

*Kallas & Henk* (by *Constantine N. Kallas*), for John Stevens.

Before: R. M. MAHER, P.J., and SHEPHERD and G. S. ALLEN,* JJ.

G. S. ALLEN, J. In this action for wrongful death brought against the driver of the car in which decedent was a passenger and against the tavern which allegedly served the driver while he was visibly intoxicated, defendant Stevens in Docket No. 88169 and plaintiff Heyler in Docket No. 88268 appeal as of right from an October, 1985, judgment entered by the trial court pursuant to verdicts returned by the jury against Larry Dixon, driver, in the amount of $175,000 and against John Stevens, doing business as Confetti Lounge, in the amount of $175,000, each award to be reduced by decedent's fifteen percent jury-deter-

_____

* Former Court of Appeals judge, sitting on the Court of Appeals by assignment.

mined comparative negligence. By order of this Court the appeals were consolidated.

On February 10, 1980, at approximately 2:18 A.M., Larry Dixon, driving a vehicle belonging to his father, Paul Dixon, westbound on Van Born Road in Dearborn Heights, lost control of the car and hit a post. There were no other vehicles involved in the accident. Barbara Ann Heyler, age twenty-two, a passenger in the vehicle, was killed as a result of injuries she sustained in the accident. Barbara was the live-in girlfriend of Dixon and they had a daughter, Stacy Ann Heyler, age two, who lived with them. Dixon had left the Confetti Lounge at approximately 2:10 A.M., only minutes before the accident occurred.

Barbara had driven Larry to the Confetti Lounge about noon on February 9, 1980. After leaving Larry at the lounge Barbara drove to her mother's home where she remained during the day. The car Barbara was driving was owned by Larry's father, Paul Dixon, who had loaned the vehicle to Larry. About 9:00 P.M. Barbara drove the car back to the Confetti Lounge where she joined Larry and several friends. Barbara had nothing to drink but from time to time Larry drank beer which was served to him. Larry and Barbara left the Confetti Lounge at approximately 2:10 A.M., February 10, 1980, and proceeded westerly on Van Born Road with Larry driving and Barbara sitting in the front seat beside him. The accident occurred at approximately 2:18 A.M.

In a criminal proceeding, Larry Dixon was charged with manslaughter. On February 28, 1980, at a meeting held in Dixon's criminal attorney's office, with Dixon, his attorney, and counsel for plaintiff Harold Heyler present, Dixon signed a statement written by counsel for Heyler. In relevant part the statement read:

My name Larry George Dixon. On the date of 2/9/80 and 2/10/80 I was at the Confetti Lounge on Pelham Rd in Dearborn Heights.

I arrived there 2/9/80 at 5:PM. [sic] I left the bar at 1:30 AM on 2/10/80.

I had one or 2 beers an hour during the time I was there. I do not know the exact number. I bought all the drinks I had myself. Several persons were serving me.

Just before I left the bar I was feeling high. I believe my speech was slurred. I was not staggering. I don't recall talking to anyone who worked at the bar just before I left. I was last served with a drink, as best as I can recall, within the last hour that I was in the bar.

I feel that's when I was last served during the evening, based on my recollection of the amount I had to drink, how high I felt and the fact that my speech was slurred to a sober person I would appear visibly intoxicated.

Ultimately the manslaughter charge was reduced to negligent homicide and Dixon was placed on two years' probation.

On May 7, 1980, Harold Heyler, personal representative of his daughter, Barbara Heyler, filed a dramshop action for wrongful death against Larry Dixon, driver, Paul Dixon, car owner, and John Stevens, doing business as Confetti Lounge. The complaint alleged that decedent was killed in an automobile collision which was solely and proximately caused by the negligent driving of Larry Dixon, and that Larry Dixon was served intoxicating beverages while he was in a visibly intoxicated condition at the Confetti Lounge, contrary to MCL 436.22 *et seq.*; MSA 18.993 *et seq.* Defendants were sued jointly and severally for $1,000,000.

On March 6, 1981, settlement with defendants Larry Dixon and Paul Dixon was reached in the sum of $47,500. As part of the settlement, it was

agreed that Larry Dixon would be retained as a nominal defendant in the action against defendant John Stevens in order to comply with the name and retain provisions of the dramshop act as set forth and defined in *Buxton v Alexander,* 69 Mich App 507; 245 NW2d 111 (1976), lv den 399 Mich 827 (1977).

On September 28, 1982, the Michigan Supreme Court issued its opinion in *Putney v Haskins,* 414 Mich 181; 324 NW2d 729 (1982), reh den 414 Mich 1111 (1982), overruling *Buxton v Alexander* and stating that a case against a dramshop defendant must be dismissed if a settlement of any type has been entered into between the plaintiff and the allegedly intoxicated person. On October 19, 1982, defendant Stevens moved for summary judgment on the basis of the *Putney* decision. In response plaintiff moved to set aside the settlement agreement entered into March 6, 1981. On November 4, 1982, this case was taken off the docket and decision on the motions was held in abeyance pending ruling by the Supreme Court on whether *Putney* was applicable retroactively.

On February 6, 1984, the Supreme Court ruled in *Tebo v Havlik,* 418 Mich 350; 343 NW2d 181 (1984), reh den 419 Mich 1201 (1984), that its ruling in *Putney* would be prospective only, thereby saving plaintiff's cause of action against Stevens as permitted by this Court in *Buxton v Alexander, supra.* However, in the interim period,[1] the Chief Judge of the Wayne Circuit Court took all dramshop cases involving this issue off the trial docket. After the Supreme Court issued its opinion in *Tebo,* indicating that the decision was to be given prospective application only, the instant case

[1] For further discussion of the interim period see Issue II, Docket No. 88268, *infra.*

was returned to the trial docket and proceeded to trial March 19, 1984.

On November 20, 1984, the jury returned separate verdicts against Larry Dixon in the amount of $175,000 and against Stevens in the amount of $175,000. The jury also found the decedent to be fifteen percent comparatively negligent but only applied the fifteen percent to Larry Dixon and not to defendant Stevens. Following a hearing on disagreement between the plaintiff and Stevens concerning whether interest should run during the sixteen-month period of stay and whether the judgment of $175,000 against defendant Stevens should be reduced by fifteen percent, the trial court entered judgment October 2, 1985, against Stevens for $149,000 ($175,000 less fifteen percent) and awarded interest thereon from the date of filing minus the period the matter was removed by the chief judge from the trial docket. Interest on the judgment against Stevens, as so computed, is accumulating at the rate of $2,474.08 per month.

From the judgment so entered against Stevens both parties appeal. In Docket No. 88169 defendant Stevens appeals raising five claims of error. According to Stevens no judgment should have been issued against the lounge. In Docket No. 88269 plaintiff Heyler appeals asserting three grounds why the judgment was insufficient.

### DOCKET NO. 88169

I. WHETHER THE TRIAL COURT ERRED (1) IN ALLOWING PLAINTIFF TO CALL LARRY DIXON AS A WITNESS ON PLAINTIFF'S BEHALF AND (2) IN ALLOWING INTO EVIDENCE A STATEMENT WRITTEN BY COUNSEL FOR PLAINTIFF AND SIGNED BY LARRY DIXON.

Without objection from counsel for defendant

Stevens, plaintiff called Larry Dixon as a witness for plaintiff under the adverse party statute, MCL 600.2161; MSA 27A.2161. Stevens contends this was error because Dixon had settled with plaintiff in March, 1981, for $47,500 and, additionally, since the principal beneficiary of the decedent's estate is Stacy Heyler, Larry Dixon's daughter, the interests of Dixon and plaintiff are substantially similar. In *Wilson v W A Foote Memorial Hospital,* 91 Mich App 90, 100; 284 NW2d 126 (1979), our Court held that, where defendant doctors had settled with plaintiff prior to trial, "the trial judge properly ruled that for purposes of cross-examination [the doctors] were not adverse parties to the plaintiff." However, unlike the situation in the instant case, defendant there objected to the proposed cross-examination under the statute. Here no objection was made to the questioning of the witness until counsel attempted to admit the written statement signed by Dixon. A defendant may not for the first time on appeal allege as error improper questions on cross-examintion. *People v Lyles,* 148 Mich App 583; 385 NW2d 676 (1986).

Further, assuming, arguendo, that the trial court erred, we find the error harmless. In view of the testimony of Theresa Earles, who was present with Larry Dixon and decedent at the Confetti Lounge and who testified that she did not want decedent to leave with Dixon because he was visibly intoxicated and, in view of the testimony of the two officers who arrived at the scene of the accident and found Dixon visibly intoxicated, we are unable to conclude that Dixon's statements had an impact on the jury any more than the similar testimony given by the other witnesses. Accordingly, we conclude that Dixon's testimony on cross-examination under the statute was not

inconsistent with substantial justice. MCR 2.613(A).

Stevens also argues that, even if this Court concludes that the trial court did not err in admitting Dixon's oral testimony on cross-examination, error occurred when the trial court allowed into evidence the statement written by plaintiff's counsel and signed by Larry Dixon. On this issue Stevens' claim has merit since objection was made. Nevertheless, pursuant to MCR 2.613(A), we find any error harmless. Nothing in the written statement contains anything not also more forceably stated by Theresa Earles and Officers Deptula and Haase. Their testimony was far more damaging than the words "I was not staggering" in the statement signed by Dixon.

II. WHETHER THE TRIAL COURT ERRED IN DENYING STEVENS' MOTION FOR SUMMARY DISPOSITION FOR PLAINTIFF'S ALLEGED FAILURE TO COMPLY WITH THE NAME AND RETAIN PROVISION OF THE DRAMSHOP ACT.

Following closing arguments, counsel for Stevens renewed a motion for summary disposition for failure to comply with the terms of the name and retain provision of the Michigan dramshop act, arguing that Dixon was merely ostensibly named in the lawsuit, as a settlement had been reached between plaintiff and Dixon prior to trial at which time all of his liability was extinguished.

The name and retain provision of the dramshop act, MCL 436.22; MSA 18.993, as amended in 1972, provides:

> No action against a retailer or wholesaler or anyone covered by this act or his surety, shall be commenced unless the minor or the alleged intoxicated person is a named defendant in the action

and is retained in the action until the litigation is concluded by trial or settlement.

The rationale for the amendment was expressed by this Court in *Salas v Clements,* 57 Mich App 367, 372; 226 NW2d 101 (1975), rev'd on other grounds 399 Mich 103; 247 NW2d 889 (1976), as follows:

> The "name and retain" provision will, to some extent, reduce tavern-owner liability by restricting recourse to the dramshop act. The provision will eliminate the common practice whereby the intoxicated person enters into a settlement with the injured plaintiff for a token sum, and thereafter energetically assists the plaintiff with the prosecution of a suit against the tavern owner. The provision will also discourage possible collusion and perjury by those too weak to resist the obvious temptation inherent in the original dramshop act which has now been recognized by the Legislature and corrected through this amendment.

While *Putney, supra,* holds that, where a settlement had been entered into between plaintiff and the allegedly intoxicated person prior to the conclusion of a dramshop suit against the liquor licensee, dismissal of plaintiff's case against the liquor licensee is mandated, our Supreme Court in *Tebo, supra,* held that *Putney* was to be applied prospectively only, thus making the law in existence prior to *Putney* applicable to the instant case. Accordingly, plaintiff in the instant case was entitled to rely on *Buxton, supra.* In that case this Court held that, when an intoxicated defendant executes a settlement and indemnity agreement with the injured plaintiffs, the 1972 name and retain amendment to the dramshop statute does not preclude further claim against the tavern owner. In discussing the purpose of the name-and-

retain provision of the dramshop statute, the *Buxton* Court stated:

> Balanced against this purpose is the policy of the law to encourage settlement of litigation. The statute is not intended to *prohibit* settlement between a plaintiff and his intoxicated tortfeasor except where claims against tavern owners are first or simultaneously settled. On the contrary, the language of the statute indicates only an intention to require the intoxicated tortfeasor to be retained *as a defendant.* In enacting this "special interest legislation" the Legislature has manifested an intention to prohibit a plaintiff from going to a jury with only a claim versus a tavern. The plaintiff must not only name but must retain the tortfeasor in the lawsuit. But that is all the statute requires. *To prohibit a plaintiff from a "hold harmless" type settlement, as was used here, would impede the prompt disposition of litigation and force trials of cases that would otherwise be settled.* In so holding, this Court recognizes the power of the trial court to control the course of trial; for example, a trial court might, at the option of a tavern owner, prohibit any reference at trial to the settlement. Thus, the legislative purpose could be amply carried out. [69 Mich App 511.]

Under the guidelines established in *Buxton,* plaintiff was entitled to make a hold harmless settlement with the intoxicated driver and to keep the driver in the case as a nominal defendant. This is precisely what plaintiff did. Contrary to Stevens' assertion, nothing in *Buxton* required that plaintiff also establish that no collusion took place or that the settlement was not for a token amount. Accordingly, we find that the trial court did not err in denying Stevens' motion for summary disposition on grounds that plaintiff failed to

comply with the name and retain provision of the statute.

III. WHETHER THE TRIAL COURT ERRED IN DENYING STEVENS' MOTION FOR A DIRECTED VERDICT.

Following plaintiff's proofs, Stevens moved for a directed verdict on the ground that plaintiff had failed to present competent evidence that (1) the alleged intoxication on the part of Dixon was a proximate cause of the accident in which Barbara Heyler was killed and that (2) Dixon was served alchoholic beverages by employees of Stevens at a time when Dixon was displaying signs of visible intoxication.

The Michigan Standard Jury Instructions state that the following four elements must be proven in order to maintain a cause of action under the dramshop act:

> 1. that plaintiff was injured or damaged by a visibly intoxicated person;
> 2. that the defendant unlawfully sold, gave or furnished intoxicating liquor to such person;
> 3. that such selling, giving or furnishing caused or contributed to the intoxication of such persons; and
> 4. that such selling, giving or furnishing was a proximate cause of the plaintiff's injury. [SJI2d § 11, Introduction, p 11-3.]

The standard of review applicable to a denial of a motion for a directed verdict is that review by this Court is limited to whether the party opposing the motion offered evidence upon which reasonable minds could differ; the test is whether, viewing the facts in a light most favorable to the nonmoving party, reasonable persons could reach a different conclusion and, if so, the case is properly one for

the jury; the nonmoving party must be given the benefit of every reasonable inference that can be drawn from the evidence. *Ford v Blue Cross & Blue Shield of Michigan,* 150 Mich App 462, 464; 389 NW2d 114 (1986).

Stated in a light most favorable to plaintiff the following facts were established at trial.

On February 9, 1980, Barbara Heyler drove Larry Dixon to the Confetti Lounge. The facts are not clear as to whether this took place at approximately 12:00 noon or at approximately 5:00 P.M. as claimed in the written statement signed by Dixon. Upon leaving Dixon at the Confetti Lounge, Barbara went to her mother's home and remained there during the day. Dixon remained at the Confetti Lounge until approximately 2:10 A.M. the following morning.

Larry Dixon admitted that, while there, he consumed one to two beers per hour. However, Dixon also stated that his best estimate of the amount of intoxicants consumed was eight to ten beers. Barbara joined Dixon at the Confetti Lounge later on during the evening of February 9. She did not consume any alcoholic beverages.

Barbara Heyler and Larry Dixon left the lounge together at approximately 2:10 A.M. driving westbound on Van Born Road. Dixon passed a number of vehicles at a high rate of speed and, upon attempting to maneuver his vehicle back into the right lane, he lost control of the car and it slid into a steel post. Barbara Heyler struck the windshield, sustaining massive head injuries, and died shortly thereafter. The accident occurred at approximately 2:18 A.M., only minutes after the couple left defendant Stevens' lounge.

Officer Deptula observed Dixon at the scene of the accident and testified that Dixon was highly intoxicated, smelled of intoxicants, was unsteady

on his feet and had bloodshot eyes. On cross-examination he stated that based upon his experience with drunk drivers Dixon's behavior had more to do with alcohol than with shock. Officer Haase gave similar testimony stating that at the scene of the accident Dixon smelled of intoxicants, staggered, had bloodshot eyes and at the hospital was combative and obnoxious. He admitted that bloodshot eyes and staggering would also be consistent with a broken kneecap which Dixon suffered, and with shock.

Dixon testified that he did not remember if his speech was slurred on the night of the accident; that he was not staggering at all but to a sober person he probably seemed to be visibly intoxicated. Counsel for Stevens objected to such testimony, based on the fact that Dixon could not testify as to what other people's observations of him would be. The trial court rightfully sustained the objection.

There appears to be no dispute that Dixon was served alchoholic beverages by employees of the Confetti Lounge. However, the mere fact that the alleged intoxicated person drank alcoholic beverages is not sufficient to establish that he was visibly intoxicated. *Juckniess v Supinger,* 323 Mich 566; 36 NW2d 148 (1949); *Lasky v Baker,* 126 Mich App 524; 337 NW2d 561 (1983). A 1972 amendment to the dramshop act, 1972 PA 196, substituted "visibly intoxicated" for "intoxicated." Current case law requires that the allegedly intoxicated person must be "visibly" intoxicated at the time of *the sale.* See *Archer v Burton,* 91 Mich App 57; 282 NW2d 833 (1979), lv den 407 Mich 932 (1979); *Lasky v Baker, supra; McKnight v Carter,* 144 Mich App 623; 376 NW2d 170 (1985).

SJI2d 75.02 defines visibly intoxicated as follows: "A person is 'visibly intoxicated' when his or her

intoxication would be apparent to an ordinary observer." This Court has repeatedly held that an action under the dramshop act may be proven by circumstantial evidence and that, if the combination of the circumstantial evidence and the permissible inferences drawn therefrom are sufficient to establish a prima facie case, a directed verdict is improper. See *Villa v Golich,* 42 Mich App 86, 88; 201 NW2d 349 (1972), lv den 388 Mich 802 (1972); *Durbin v K-K-M Corp,* 54 Mich App 38, 56-57; 220 NW2d 110 (1974), lv den 394 Mich 789 (1975); *Lasky, supra,* p 529.

The relevant inquiry thus posed is whether the combination of circumstantial evidence and the permissible inference drawn therefrom as established by the foregoing summarization of facts permits a finding that Dixon was visibly intoxicated when he was last served alcohol at the Confetti Lounge. We conclude that it does. Quite apart from the written statement signed by him on February 28, 1981, Dixon testified at trial that to a sober person he appeared intoxicated.

> *Q. [By Mr. Mason, attorney for plaintiffs]:* Do you recall saying that: "To a sober person, I believe I would appear, I would have appeared visibly intoxicated."
>
> *A.* Those aren't my words. I don't talk in that manner, so I know I didn't—
>
> *Q.* Well, whether they are your words or not, sir, you did agree, when you gave the statement that when you were last served in the Confetti Lounge, to a sober person you would appear to be intoxicated, visibly intoxicated, and you agreed with me on February 28th, correct?
>
> *A.* Yes, sir; *I still agree.*
>
> *Q.* Do you agree with it at this time?
>
> *A.* Yes. But then again, of course, you can have four beers and walk out on the street and you did

start to have a conversation with somebody, your speech might be a little slurred, and you might not even know it. [Emphasis added.]

Keeping in mind that at trial Dixon admitted he drank one or two beers an hour and, depending upon which version of facts one accepts as to whether Dixon stayed at the lounge fourteen hours or nine hours, it is clearly apparent that Dixon consumed somewhere between nine and twenty-eight beers during his stay at the Confetti Lounge. Viewing the testimony in the light most favorable to plaintiff, viz.: —two beers an hour multiplied by nine to fourteen hours—Dixon consumed eighteen to twenty-eight beers during the drinking session. This fact, combined with an accident occurring within minutes after Dixon left the lounge and the testimony of the officers arriving at the scene of the accident that Dixon "smelled highly" of intoxicants, is more than sufficient evidence from which a jury could reasonably conclude that Dixon was visibly intoxicated when he was served beer. Certainly this is a more reasonable conclusion than the inference which defendant argues we should draw, namely: that Dixon's visible intoxication only became apparent after the accident occurred.

Although Stevens' motion was made at the conclusion of plaintiff's case in chief, plaintiff was also able to prove upon cross-examination of one of Stevens' witnesses, Terry Earles, that Dixon was visibly intoxicated. Earles testified that she did not want Barbara Heyler to go with Larry Dixon becaue he was visibly intoxicated. Upon recross-examination by plaintiff's counsel the following exchange took place:

Q. But you do recall that at the time that you

observed him up at the Confetti Lounge, you were able to formulate an opinion that he was visibly intoxicated, is that correct?

*A.* That's correct.

*Q.* But you can't remember what specific factors in his behavior led you to that conclusion?

*A.* That's correct.

For the foregoing reasons, we conclude that the trial court did not err in denying defendant's motion for a directed verdict.

### IV. WHETHER THE TRIAL COURT ERRED IN FAILING TO LIMIT THE TESTIMONY OF LAY WITNESSES TO THEIR OBSERVATIONS.

Stevens argues that under the present state of the law the only way to prove visible intoxication is by testimony as to the actions and conduct of the alleged intoxicated person, and that "opinions of lay witnesses as to whether the intoxicated person was intoxicated *or had too much to drink* (based on their peculiar knowledge of the allegedly intoxicated person) should not be admitted." Stevens then explains that the statements of Officers Deptula and Haase and of Terry Earles that Larry Dixon was visibly intoxicated were not based on what the witnesses actually observed but upon prior knowledge acquired from arrests of other drivers or from personally knowing the deceased. In this connection Stevens contends that the rule permitting opinion testimony by lay witnesses (MRE 701) is not applicable to the instant case because "the opinions and conclusions of the various witnesses added nothing to a determination that must be made by the jury." We disagree on two grounds.

First, the several witnesses each testified to

certain physical observations made of Dixon. In
*People v Grisham,* 125 Mich App 280, 286; 335
NW2d 680 (1983), our Court ruled that "any wit-
ness is qualified to testify as to his or her physical
observations *and opinions* formed as a result of
those observations." (Emphasis added.) Second,
Stevens construes MRE 701 too narrowly. Under
the rule opinions may be expressed if "helpful to a
clear understanding of his testimony or the deter-
mination of a fact in issue." We also note that any
possible undue prejudice was minimized by the
fact that on cross-examination, opposing counsel
had the opportunity to test the specific perceptions
upon which the witness' opinion was based.

## V. WHETHER THE TRIAL COURT UNDULY LIMITED THE SCOPE OF INQUIRY INTO THE CARE AND SUPPORT OF STACY HEYLER.

Observing that the damage issues in the instant
case principally involve the losses sustained by
Stacy Heyler, the minor child of decedent, Stevens
contends that the limitations imposed by the court
on inquiry into the child's support and care before
and after decedent's death were too restrictive. We
find the argument without merit since support was
not an element of damage.

Decedent did not have a lengthy prior work
history and was off work when the accident hap-
pened. Thus, there was little evidence adduced
regarding what support decedent provided her
daughter. In fact, the only elements of damage
upon which the jury was instructed were shock
and fright and loss of companionship, including
loss of services. Thus, we see no purpose in further
inquiry into the extent of support of the minor
child.

Stevens further suggests that Stacy's grandpar-

ents were her primary source of caretaking support. This claim is not supported by the record.

In summary, we find no grounds for reversal on any of the issues raised by defendant Stevens in Docket No. 88169.

### DOCKET NO. 88268

We now turn to the separate appeal taken by plaintiff from the judgment entered by the trial court. Plaintiff contends that the judgment against Stevens was insufficient in amount for three reasons: (1) a dramshop owner is jointly and severally liable with the intoxicated driver; (2) prejudgment interest continues to accrue during the period trial was stayed by order of the trial court; and (3) the jury determination of fifteen percent comparative negligence should not have been automatically applied in the dramshop action.

### I. IS THE DRAMSHOP OWNER JOINTLY AND SEVERALLY LIABLE WITH THE INTOXICATED AUTOMOBILE DRIVER?

Plaintiff argues that under Michigan law a dramshop defendant is jointly and severally liable with the offending vehicle driver for the wrongful death of a third party (*Salim v LaGuire*, 138 Mich App 334; 361 NW2d 9 [1984]; *O'Dowd v General Motors Corp*, 419 Mich 597; 358 NW2d 553 [1984]) and, thus, Stevens is fully liable for the entire $350,000 rather than for the $175,000 verdict. Stevens does not dispute the present state of the law but contends that, because *O'Dowd* was decided two months after the instant case was tried and because *Salim*, although decided one month before trial in this case, was not published until after trial and because the instant case was tried by counsel on the basis of pre-*Salim* law that the

verdicts and judgments would be separate, it would be inequitable and unjust to make defendant Stevens liable for the entire $350,000 judgment. We are persuaded by Stevens' argument.

For the reasons set forth at some length in Issue II of Docket No. 88169, *supra,* the instant case was tried under the guidelines set forth and existing in *Buxton v Alexander, supra.* Under those guidelines the liability of the tavern and the liability of the intoxicated driver were separate. Under *Putney v Haskins, supra,* a decision rendered two years before trial in the instant case, suit against the liquor establishment is automatically dismissed once a settlement is made with the alleged intoxicated driver. Thus, but for *Tebo v Havlik, supra,* which held that *Putney* was applicable prospectively only, plaintiff's claim against defendant Stevens would have never been tried and the judgment of $175,000 would never have been rendered. To keep Stevens in the case under pre-*Putney* rules but then to double the judgment against him under post-*Putney* rules is unconscionable and offends justice. Nothing in the record remotely suggests that had the jury known that Stevens would have been liable for $350,000 it would have returned a verdict against him for $175,000. In fact, the record reflects the contrary. In closing argument counsel for plaintiff asked the jury to return a verdict of $100,000 against Dixon and $500,000 against Stevens. Instead, the jury returned verdicts of equal amounts against each defendant.

II. DID THE TRIAL COURT ERR IN DISALLOWING PRE-JUDGMENT INTEREST DURING THE PERIOD TRIAL WAS STAYED?

The instant case was stayed by the Chief Judge

of the Wayne Circuit Court from November 4, 1982, to March 19, 1984, pending application for rehearing in the Michigan Supreme Court on *Putney, supra,* in order to determine whether *Putney* should be given retroactive or a prospective application. This directive made no provision for a toll of prejudgment interest during the period of the stay. However, the judgment finally entered by the trial court tolled prejudgment interest during this 16-½ month period.

MCL 600.6013; MSA 27A.6013 expressly provides that interest is to be paid on money judgments from the date the complaint is filed. The provision is primarily remedial and is intended to compensate prevailing parties for expenses incurred in bringing actions for money damages and for any delay in receiving such damages. *Goins v Ford Motor Co,* 131 Mich App 185, 292; 347 NW2d 184 (1983), lv den 424 Mich 879 (1986). Because it is remedial in nature, it is to be liberally construed in order to effectuate its purpose. *American Anodco, Inc v Reynolds Metals Co,* 572 F Supp 895 (WD Mich, 1983), aff'd 743 F2d 417 (CA 6, 1984). The use of the word "shall" in a statute connotes mandatory duty or requirement. *Wayne Co v State Treasurer,* 105 Mich App 249, 252; 306 NW2d 468 (1981), lv den 412 Mich 915 (1982). Furthermore, imposition of statutory interest on money judgments recovered in civil actions is mandatory. *State Hwy Comm v Great Lakes Express Co,* 50 Mich App 170, 185; 213 NW2d 239 (1973).

The issue of whether a stay tolls the running of statutory interest is of first impression in Michigan. However, 45 Am Jur 2d, Interest and Usury § 103, pp 90-91, provides:

> If the adjudication is valid, interest will not accrue during the time that the payment of a debt

is *prevented through no fault of the debtor* by the interposition of law, as *where payment is prevented by a judgment, order, statute, or judicial process.* Thus, interest will not, as a rule, be charged against one who is enjoined from making payment unless it appears or can fairly be presumed that he actually gained some advantage by the use of the money or received some interest or profit from its use by others, although, according to some authorities, he must pay the money into court in order to escape the payment of interest. [Emphasis added.]

Interest on the judgment in the instant case, excluding the 16-½ month period of stay, is seventy-two percent of the judgment and is increasing at the rate of $2,474.08 per month. In view of the decisions in other jurisdictions that, where delay is caused through no fault of the debtor and because delay in the instant case was not occasioned by defendant Stevens, we hold that the trial court in the instant case did not err in disallowing prejudgment interest during the period of stay.

III. DID THE TRIAL COURT ERR IN RULING THAT DECEDENT'S FIFTEEN PERCENT COMPARATIVE NEGLIGENCE WAS APPLICABLE TO DEFENDANT STEVENS IN THE DRAMSHOP ACTION?

In the special form of verdict the jury found that Barbara Heyler was fifteen percent negligent but applied this comparative negligence against Dixon only and not against the liquor establishment. However, the trial court applied the fifteen percent comparative negligence against both defendants and reduced the judgment against Stevens to $149,000. Plaintiff contends the trial court erred. We disagree.

Comparative negligence is a factual defense which is available to dramshop defendants as well

as to intoxicated driver defendants where the facts
support it. *Lyman v Bavar Company, Inc,* 136
Mich App 407; 356 NW2d 28 (1984). Plaintiff ap-
pears to argue that the facts do not support a
finding of comparative negligence on the part of
Barbara Heyler. The facts are to the contrary. The
facts disclose that: Barbara Heyler voluntarily
returned to the Confetti Lounge knowing full well
that Larry Dixon had been drinking at the lounge
for several hours; upon returning Barbara sat with
Dixon and friends observing Dixon consume one or
two beers per hour; although she did not drink
there is no evidence that she attempted to stop
Dixon from drinking; and, finally, though she lived
but two blocks from the lounge and could easily
have walked home, she elected to leave with Dixon
who walked out of the lounge carrying a bottle of
beer, and entered the car on the passenger side,
allowing him to drive even though other persons
in the bar believed defendant was then visibly
intoxicated.

Clearly, Barbara Heyler was comparatively neg-
ligent. To apply that negligence only against the
intoxicated driver and not against the establish-
ment which provided the intoxicants would cause
inconsistent verdicts. Under the circumstances, the
trial judge very properly applied the comparative
negligence to both defendants.

In summary, we find no error on the issues
raised by plaintiff in Docket No. 88268. Thus,
having found no error by the trial court in either
Docket No. 88169 or Docket No. 88268, the judg-
ment of the trial court entered May 2, 1985. is
affirmed. No costs, neither party having prevailed
in full.

Shepherd, J., concurred.

R. M. Maher, P.J. *(concurring in part and dis-*

*senting in part).* I respectfully dissent from the non sequitur of the majority in No. 88268 by which application of *Buxton v Alexander,* 69 Mich App 507; 245 NW2d 111 (1976), through *Putney v Haskins,* 414 Mich 181; 324 NW2d 729 (1982), precludes application of *Salim v LaGuire,* 138 Mich App 334; 361 NW2d 9 (1984), and *O'Dowd v General Motors Corp,* 419 Mich 597; 358 NW2d 553 (1984). *Putney* requires us to uphold the dramshop judgment against Stevens. I see no inequity in doing so therefore observe no reason to balance-out *Putney's* effect by denying application of *Salim* and *O'Dowd.* Moreover, I see nothing in the jury verdict which would warrant the majority's decision to withhold application of *Salim* and *O'Dowd.* The injury in this case was indivisible and could not have occurred without the negligence of both defendants. Under these circumstances, joint and several liability is intended to fully compensate the victim, not fairly tax the tortfeasor. See generally, 65 CJS, Negligence, § 102, pp 1117-1127. I would apply joint and several liability to the judgment.