REED v BRETON
KUENNER v BRETON

Docket Nos. 247837, 247974. Submitted November 2, 2004, at Lansing.
Decided November 18, 2004, at 9:00 a.m. Leave to appeal sought.

Lawrence Reed, personal representative of the estate of Lance
Nathan Reed, deceased, and James D. Kuenner, personal repre-
sentative of the estate of Adam W. Kuenner, deceased, separately
brought wrongful death and dramshop actions in the Jackson
Circuit Court against Frederick Breton, personal representative of
the estate of Curtis J. Breton, deceased; H.B. Resort Enterprises,
Inc.; and Beach Bar, Inc., after a vehicle driven by Curtis Breton
crossed the center line of a highway and collided with a vehicle
occupied by the plaintiffs' decedents. Plaintiffs alleged negligence
by H.B. Resort Enterprises and Beach Bar for selling intoxicating
liquor to a visibly intoxicated Curtis Breton, in violation of MCL
436.1801(2). After the close of discovery, the court, Chad C.
Schmucker, J., granted summary disposition for Beach Bar, ruling
that plaintiffs had failed to present a genuine issue of material fact
regarding the last establishment to serve intoxicating liquor to
Breton and that Beach Bar was thus entitled under MCL
436.1801(8) to the rebuttable presumption that it was not liable.
The court determined that plaintiffs were required to present
positive, unequivocal, strong, and credible evidence that Breton
was visibly intoxicated when served at Beach Bar to rebut the
statutory presumption, and that the testimony of plaintiffs' expert
witnesses was insufficient to meet the burden. Plaintiffs each
appealed by leave granted, and the appeals were consolidated.

The Court of Appeals *held*:

Beach Bar was entitled to the statutory presumption of MCL
436.1801(8) against liability on the basis of the deposition testi-
mony. The presumption is rebuttable under MRE 301, however, by
credible and competent evidence to the contrary, in this case
evidence that it was more probable than not that Breton was
visibly intoxicated when served at Beach Bar. The statutory
presumption does not require a heightened burden of proof of
positive, unequivocal, strong, and credible evidence to overcome it.
Circumstantial evidence in the form of testimony by Breton's

drinking companion and reports by plaintiffs' toxicology experts concluding that Breton had sufficient alcohol in his system to exhibit visible signs of intoxication when served was competent and credible evidence to overcome the statutory presumption. The circuit court improperly granted summary disposition.

Reversed and remanded for jury trial.

INTOXICATING LIQUORS — DRAMSHOP ACTIONS — PRESUMPTION AGAINST RETAIL LICENSEE LIABILITY — REBUTTAL.

The standard to rebut the presumption against liability by a retail licensee in a dramshop action for unlawfully selling, giving, or furnishing intoxicating liquor to a visibly intoxicated person is the presentation of competent and credible evidence, including circumstantial evidence, that it was more probable than not that the defendant violated the statutory prohibition against selling, giving, or furnishing intoxicating liquor to a visibly intoxicated person (MCL 436.1801[8]).

*Dennis Hurst* for Lawrence Reed.

*D'Agostini, Sable and Ruggeri, P.L.L.C.* (by *John M. Ketzler*), for James D. Kuenner.

*Garan Lucow Miller, P.C.* (by *Megan K. Cavanagh* and *Kenneth V. Klaus*), for Beach Bar, Inc.

Before: COOPER, P.J., and FITZGERALD and HOEKSTRA, JJ.

PER CURIAM. In these consolidated appeals, plaintiffs Lawrence Reed and James D. Kuenner, as personal representatives of the estates of their decedents, appeal by leave granted the trial court's order granting summary disposition in favor of defendant Beach Bar[1] pursuant to MCR 2.116(C)(10) in these wrongful death and dramshop actions. We reverse and remand to the trial court for a jury trial, as there exists a question of

---

[1] Although Mr. Reed has raised issues against all the original defendants, this appeal only pertains to defendant Beach Bar.

fact regarding Curtis J. Breton's visible intoxication when he was served in defendant's bar.

## I. FACTS AND PROCEDURAL HISTORY

At 10:11 p.m. on April 20, 2001, Mr. Breton was traveling northbound on US-127 at approximately one hundred miles an hour. He crossed over the center line into oncoming traffic and collided with a vehicle occupied by plaintiffs' decedents. Both vehicles caught fire on impact and none of the occupants survived. At the time of the accident, Mr. Breton's blood alcohol level was 0.215 percent.

Mr. Breton, a firefighter, ended a twenty-four hour shift at 7:30 a.m. He and his coworker, John Marsh, joined a drop-in hockey game and then ate lunch at a pub with friends. Mr. Marsh testified that the lunch party lasted two hours, that he consumed two beers during this time, and that Mr. Breton consumed an unknown amount of beer at that location. Following lunch, Mr. Marsh and Mr. Breton purchased a twelve pack of beer and went to a family member's home to repair a damaged boat dock. During the hour in which the men worked, each consumed about two or three beers.

At 5:00 p.m., Mr. Breton drove Mr. Marsh to defendant's bar where they met a friend. A waitress, Lindsey Mizerik, served the men two pitchers of beer at that time. Shortly after 6:00 p.m., Mr. Breton drove Mr. Marsh home to arrange for a babysitter and both men consumed two beers each in a ten-minute period. Upon their return to defendant's bar at around 8:00 p.m., each consumed two more bottles of beer and shared a large pizza. At approximately 9:00 p.m., Mr. Breton drove Mr. Marsh to the Eagle's Nest bar where the men ordered their final pitcher of beer. Mr. Breton returned Mr. Marsh to his home at 9:50 p.m. Mr. Breton told Mr.

Marsh that he was fine and left. It is disputed whether Mr. Breton made a final stop at defendant's bar before the fatal collision occurred.

During the course of the evening, Mr. Breton encountered various people who testified at deposition that Mr. Breton did not appear to be intoxicated. Ms. Mizerik testified that she remembered Mr. Breton because he continually attempted to secure a date with her. She testified that Mr. Breton never exhibited any erratic behavior and appeared aware of his surroundings. He did not look like he had been drinking all day and she never considered refusing to serve him. Ms. Mizerik believed that Mr. Breton returned to defendant's bar between 10:00 and 11:00 p.m., to ask her once more for a date; however, Mr. Breton neither ordered nor was served any alcohol at that time.

According to Mr. Marsh's testimony, he and Mr. Breton drank roughly the same amount of alcohol. When the pair left defendant's bar for the Eagle's Nest, Mr. Marsh could feel the effects of the alcohol he had consumed and assumed that Mr. Breton felt the same. At the Eagle's Nest, they encountered Fire Chief Mike Hendges. Chief Hendges testified that he spoke with Mr. Breton, and that he perceived the men to be in a good mood, not intoxicated. However, Chief Hendges went to Mr. Marsh's home shortly after the accident and noticed that Mr. Marsh was visibly intoxicated at that time. Mr. Breton also encountered Robert Potts, his former youth hockey coach and the owner of a convenience store that sells liquor. Mr. Potts testified that Mr. Breton exhibited no visible signs of intoxication during their conversation, such as slurred speech, glassy or bloodshot eyes, or an altered demeanor.

Plaintiffs also presented the reports of two expert witness toxicologists. Mr. Reed's expert witness specifi-

cally found—based on Mr. Breton's weight, metabolism and blood alcohol level—that Mr. Breton had consumed twenty-four or twenty-five beers in a nine-hour period and still had twelve or thirteen drinks in his system at the time of the accident. This concentration of alcohol would have affected Mr. Breton's central nervous system, leading to visible signs of intoxication, such as excitement, confusion, and stupor. Based on this concentration, the toxicologist also determined that Mr. Breton would have been visibly intoxicated when he was served at defendant's bar.

Following the accident, plaintiffs filed suit against the named defendants, alleging negligence for selling intoxicating liquor to a visibly intoxicated person in violation of MCL 436.1801(2).[2] At the close of discovery, defendant filed a motion for summary disposition pursuant to MCR 2.116(C)(10). As it was not the last establishment to serve Mr. Breton, defendant argued that it was entitled to a rebuttable presumption pursuant to MCL 436.1801(8) against liability. Defendant further argued that plaintiffs failed to overcome this presumption by presenting sufficient evidence that Mr. Breton was visibly intoxicated when served in defendant's bar. The trial court granted defendant's motion

---

[2] MCL 436.1801(3) provides for an action for a violation of MCL 436.1801(2) as follows:

> Except as otherwise provided in this section, an individual who suffers damage or who is personally injured by a minor or visibly intoxicated person by reason of the unlawful selling, giving, or furnishing of alcoholic liquor to the minor or visibly intoxicated person, if the unlawful sale is proven to a be a proximate cause of the damage, injury, or death, or the spouse, child, parent, or guardian of that individual, shall have a right of action in his or her name against the person who by selling, giving, or furnishing the alcoholic liquor has caused or contributed to the intoxication of the person or who has caused or contributed to the damage, injury, or death. . . . [MCL 436.1801(3).]

against both plaintiffs. The trial court determined that plaintiffs failed to present a genuine issue of material fact regarding the last location to serve alcohol to Mr. Breton. Accordingly, the court found that defendant was entitled to the statutory presumption. The trial court determined that, in order to overcome this presumption, plaintiffs were required to present "positive, unequivocal, strong and credible evidence" that Mr. Breton was visibly intoxicated when he was served at defendant's bar. The court stated that the testimony of the expert witnesses was insufficient to meet this burden and granted summary disposition to defendant. This appeal followed.

## II. REBUTTABLE PRESUMPTION OF MCL 436.1801(8)

Plaintiffs contend that the trial court improperly granted defendant's motion for summary disposition, as there was evidence that defendant may have been the last establishment to serve Mr. Breton. Plaintiffs further contend that, even if defendant were entitled to the statutory presumption of nonliability, the trial court improperly required plaintiffs to meet a heightened burden of coming forward with evidence to rebut that presumption. This Court reviews a trial court's determination regarding a motion for summary disposition de novo.[3] A motion under MCR 2.116(C)(10) tests the factual support of a plaintiff's claim.[4] "In reviewing a motion for summary disposition brought under MCR 2.116(C)(10), we consider the affidavits, pleadings, depositions, admissions, or any other documentary evidence submitted in [the] light most favorable to the nonmoving party to decide whether a genuine issue of

---

[3] *Beaudrie v Henderson*, 465 Mich 124, 129; 631 NW2d 308 (2001).

[4] *Auto-Owners Ins Co v Allied Adjusters & Appraisers, Inc*, 238 Mich App 394, 397; 605 NW2d 685 (1999).

material fact exists."[5] Summary disposition is appropriate only if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.[6]

The rebuttable presumption against liability is provided in MCL 436.1801(8) as follows:

> There shall be a rebuttable presumption that a retail licensee, other than the retail licensee who last sold, gave, or furnished alcoholic liquor to the minor or the visibly intoxicated person, has not committed any act giving rise to a cause of action under subsection (3).[7]

We first note that it is not at all clear from the depositions submitted that defendant's bar was Mr. Breton's final stop that evening. Ms. Mizerik testified that Mr. Breton returned to defendant's bar sometime between 10:00 and 11:00 p.m. to ask her once more for a date. However, even if Mr. Breton returned to defendant's bar after taking Mr. Marsh home and before the accident, Ms. Mizerik testified that Mr. Breton was not served at that time. Based on this testimony, the trial court properly ruled that defendant was entitled to the statutory presumption of nonliability.

We must, therefore, determine if the circumstantial evidence of Mr. Breton's visible intoxication when served at defendant's bar is sufficient to rebut the statutory presumption of nonliability. It is well settled, where the statutory presumption does not apply, that a plaintiff may establish a dramshop action solely on circumstantial evidence.[8]

---

[5] *Singer v American States Ins*, 245 Mich App 370, 374; 631 NW2d 34 (2001).

[6] *MacDonald v PKT, Inc*, 464 Mich 322, 332; 628 NW2d 33 (2001).

[7] MCL 436.1801(8).

[8] *Dines v Henning*, 437 Mich 920; 466 NW2d 284 (1991), adopting the dissenting opinion in 184 Mich App 534 , 540-541; 459 NW2d 305 (1990);

A rebuttable presumption is "[a] presumption that can be overturned upon the showing of sufficient proof."[9] According to Black's Law Dictionary, all presumptions, other than conclusive presumptions, are rebuttable.[10] The manner of rebutting a presumption has been stated in various ways. It has been said that "[o]nce evidence tending to rebut the presumption is introduced, the force of the presumption is entirely dissipated and the party with the burden of proof must come forward with evidence to avoid directed verdict."[11] Pursuant to the Michigan Rules of Evidence, a presumption in a civil case, not created by statute, "imposes on the party against whom it is directed the burden of going forward with evidence to rebut or meet the presumption" without shifting the ultimate burden of persuasion in the case.[12] Following the adoption of

---

*Miller v Ochampaugh*, 191 Mich App 48, 58; 477 NW2d 105 (1991); *Heyler v Dixon*, 160 Mich App 130, 145-146; 408 NW2d 121 (1987).

[9] Black's Law Dictionary (6th ed).

[10] *Id.*

[11] *Id.*

[12] MRE 301. MRE 301 specifically provides:

> In all civil actions and proceedings not otherwise provided for by statute or by these rules, a presumption imposes on the party against whom it is directed the burden of going forward with evidence to rebut or meet the presumption, but does not shift to such party the burden of proof in the sense of the risk of nonpersuasion, which remains throughout the trial upon the party on whom it was originally cast. [MRE 301.]

According to McCormick, this is the most widely accepted view of rebuttable presumptions. The presumption shifts the burden of producing evidence with respect to the presumed fact. Once the challenging party produces contrary evidence, the presumption disappears. McCormick, Evidence (5th ed), § 344, p 445.

In fact, this is also the standard found in the federal rules of evidence. The language of the Michigan court rule mirrors its federal counterpart in all relevant respects. See MRE 301, 1978 note; FRE 301. Although

MRE 301, the burden to overcome a presumption has been stated as follows:

> [I]f the jury finds a basic fact, they must also find the presumed fact unless persuaded by the evidence that its nonexistence is more probable than its existence.[13]
>
> ... [T]he function of a presumption is solely to place the burden of producing evidence on the opposing party. It is a procedural device which allows a person relying on the presumption to avoid a directed verdict, and it permits that person a directed verdict if the opposing party fails to introduce evidence rebutting the presumption.[14]

To make rebuttable presumptions "disappear," the challenging party must generally produce credible or competent evidence to the contrary.[15]

---

Congress allows the United States Supreme Court to prescribe federal rules of evidence, 28 USC 2072(a), Congress originally enacted the federal rules, including FRE 301. *People v Stevens*, 461 Mich 655, 666 n 10; 610 NW2d 881 (2000). Congress enacted this version of FRE 301 only after much debate on the different methods of rebutting presumptions. *Widmayer v Leonard*, 422 Mich 280, 287-288; 373 NW2d 538 (1985).

[13] See also *Dawes v Wittrock Sandblasting & Painting, Inc*, 266 Neb 526, 544; 667 NW2d 167 (2003); *Oregon v Dahl*, 336 Ore 481, 486-487; 87 P3d 650 (2004) (while finding this standard of proof applicable in civil cases, the Oregon court also found that a common-law presumption disappears when "legally sufficient rebutting evidence" is produced).

[14] *Widmayer, supra* at 289.

[15] *Krisher v Duff*, 331 Mich 699, 705; 50 NW2d 332 (1951); *Cebulak v Lewis*, 320 Mich 710, 722-723; 32 NW2d 21 (1948). The *Krisher* Court specifically found:

> It has been well settled in this State that the effect of a rebuttable presumption is to make out a prima facie case at the beginning of a trial. Having established the original prima facie case, the presumption then casts the burden of proof on the opposite party. Presumptions cannot be weighed against other credible evidence, for they have no value as evidence unless no other credible evidence, whatsoever is introduced in regard to the presumed fact. As a rule, they disappear if and when credible evidence is introduced from which the facts may be found. [*Krisher, supra* at 705.]

For example, the presumption pursuant to MCL 257.675c(1) that the registrant of an illegally parked vehicle is the person responsible for the violation may be rebutted by "competing evidence" of another's liability.[16] The presumption of acceptance of an offer to dedicate land for a public use under the Land Division Act[17] may be rebutted by competent evidence that the dedication was withdrawn by the plat proprietor.[18] The presumption that parties establishing a joint bank account intend to include a right of survivorship and to be equal owners of the account may be rebutted with testimony that one owner contributed more to the account than the other.[19]

Michigan courts have determined that some presumptions require a higher burden of proof to overcome. The general rule has been varied occasionally to "give weight to probability and social policy."[20] The trial court in this case determined that plaintiffs were required to show by "positive, unequivocal, strong and credible evidence" that Mr. Breton was visibly intoxicated when he was served at defendant's bar. As noted previously, however, this Court has never determined that such a heightened burden of production is required to rebut the presumption in MCL 436.1801(8).

---

[16] *Ford Motor Credit Co v Detroit*, 254 Mich App 626, 630; 658 NW2d 180 (2003).

[17] MCL 560.255b.

[18] *Marx v Dep't of Commerce*, 220 Mich App 66, 81-82; 558 NW2d 460 (1996).

[19] *Cebulak, supra* at 722-723; *Danielson v Lazoski*, 209 Mich App 623, 629; 531 NW2d 799 (1995). For further situations in which a presumption is rebutted by competent and credible evidence, see *Krisher, supra* at 705-706.

[20] *Widmayer, supra* at 288 n 10. For example, the presumption that a child's best interests will be served by remaining in the care of his or her natural parents must be rebutted by clear and convincing evidence. See *In re Trejo*, 462 Mich 341, 351; 612 NW2d 407 (2000); *Greer v Alexander*, 248 Mich App 259, 267-268; 639 NW2d 39 (2001).

The heightened burden of production applied by the trial court has been used in other circumstances—those involving the use of a motor vehicle. For instance, where there is a rear-end collision, there is a presumption that the following vehicle was negligent in causing the injury. However, this presumption may be rebutted with "positive, unequivocal, strong and credible evidence" that the first vehicle came to a sudden and abrupt stop at a time and place that a stop was not reasonably expected.[21] Pursuant to the owner's liability statute,[22] also known as the family car doctrine, when a vehicle causing injury is driven by someone other than the owner, "It shall be presumed that the motor vehicle is being driven with the knowledge and consent of the owner if it is driven at the time of the injury by his or her father, mother, brother, sister, son, daughter, or other immediate member of the family."[23] If the driver is not an immediate family member, there exists a common-law presumption that the owner has knowledge of or consented to the driver's use.[24] To overcome both the statutory and common-law presumptions, the challenging party must provide "positive, unequivocal, strong and credible evidence" that the car was not driven with the owner's knowledge or consent.[25]

Although the Michigan Supreme Court has never articulated the reason for applying this heightened

---

[21] See *Zeni v Anderson*, 397 Mich 117, 134; 243 NW2d 270 (1976), quoting *Lucas v Carson*, 38 Mich App 552, 557; 196 NW2d 819 (1972), cited in *Bieszck v Avis Rent-A-Car Sys, Inc*, 459 Mich 9, 19 n 10; 583 NW2d 691 (1998); *Hill v Wilson*, 209 Mich App 356, 360; 531 NW2d 744 (1995), quoting *Kao v Lauredo*, 617 So 2d 775, 777 (Fla App, 1993).

[22] MCL 257.401(1).

[23] *Bieszck, supra* at 11, quoting a former version of MCL 257.401(1).

[24] *Id.* at 17.

[25] *Id.* at 19; *Krisher, supra* at 706; *Landon v Titan Ins Co*, 251 Mich App 633, 649; 651 NW2d 93 (2002).

burden of proof in the case of a rear-end collision, there is ample evidence of the Court's intent with regard to the owner's liability statute. First, "an automobile, if driven by an inexperienced, incompetent, or reckless driver, partakes of the nature of a dangerous instrumentality."[26] Second, the only witnesses who can testify to the owner's knowledge or consent are the owner and his or her relative or acquaintance. Such witnesses are unlikely to testify in the opposing party's favor.[27] We do not find that either of these propositions supports rejecting the general burden of production and the application of this heightened burden in the current situation.

The presumption of MCL 436.1801(8) involves the level of intoxication of an individual and not the motor vehicle that may be involved in a subsequent injury. The instrumentality of the harm is not the motor vehicle as in the owner's liability statute. Rather, it is the intoxicated individual himself or herself. Accordingly, the policy reasons for applying the heightened burden of production to rebut the presumption in owner's liability cases are inapplicable in the current situation. Furthermore, the statute itself does not delineate a higher burden of production to rebut the presumption it creates. The courts are not entitled to presume that an omission in a statute was unintentional and fill in the blanks. The Legislature, in adopting MCL 436.1801(8), knew of the standard for overcoming a rebuttable presumption in a civil case provided in MRE 301. If the Legislature intended to depart from the general rule provided in MRE 301 and impose a heightened burden of production on plaintiffs attempting to overcome the statutory presumption of nonliability, the Legislature would have included this heightened standard in MCL

---

[26] *Krisher, supra* at 707; *Cebulak, supra* at 723.

[27] *Krisher, supra* at 706; *Cebulak, supra* at 723-726, quoting *O'Dea v Amodeo*, 118 Conn 58, 63-67; 170 A 486 (1934).

436.1801(8).[28] As the Legislature failed to do so, we must assume that the Legislature intended the general standard for rebutting presumptions provided in MRE 301 to apply in this situation.

Accordingly, the standard to rebut the presumption is the presentation of competent and credible evidence that it was more probable than not that Mr. Breton was visibly intoxicated when he was served at defendant's bar. Plaintiffs presented circumstantial evidence in this regard. Mr. Marsh testified that he felt the effects of the alcohol he consumed when the men left defendant's bar and he assumed Mr. Breton felt the same. The expert toxicologists' reports indicated that Mr. Breton had a significant amount of alcohol in his system when served at defendant's bar. Based on that amount, the experts believed that Mr. Breton would have exhibited visible signs of intoxication at that time. " 'Circumstantial evidence in support of or against a proposition is equally competent with direct.' "[29] As plaintiffs presented competent and credible evidence that Mr. Breton was visibly intoxicated when he was served at defendant's bar, the trial court improperly found that plaintiffs failed to overcome the statutory presumption of nonliability. Plaintiffs presented sufficient evidence to create a genuine issue of material fact to place this issue before the trier of fact, and defendant's motion for summary disposition was improperly granted.

We reverse and remand for a jury trial, as a question of fact exists regarding Mr. Breton's visible intoxication when he was served in defendant's bar. We do not retain jurisdiction.

---

[28] See *AFSCME v Detroit*, 468 Mich 388, 400; 662 NW2d 695 (2003) (the courts must derive the Legislature's intent from the language of the statute and not from missing language).

[29] *Cebulak, supra* at 719, quoting *Ricketts v Froehlich*, 218 Mich 459, 461; 188 NW 426 (1922).