**Michigan Supreme Court**
**Lansing, Michigan**

# Opinion

Chief Justice:          Justices:
Clifford W. Taylor      Michael F. Cavanagh
                        Elizabeth A. Weaver
                        Marilyn Kelly
                        Maura D. Corrigan
                        Robert P. Young, Jr.
                        Stephen J. Markman

FILED July 19, 2006

LAWRENCE REED, Personal
Representative of the ESTATE OF
LANCE NATHAN REED, deceased,

      Plaintiff-Appellee,

v                                       No. 127703

FREDERICK BRETON, Personal
Representative of the ESTATE OF
CURTIS JASON BRETON, deceased, and
HB RESORT ENTERPRISES, INC.,
a Michigan corporation, a/k/a EAGLES NEST,

      Defendants,

and

BEACH BAR, INC., a Michigan corporation,
a/k/a BEACH BAR,

      Defendant-Appellant.

_____

JAMES D. KUENNER, Personal Representative
of the ESTATE OF ADAM W. KUENNER,
deceased,

      Plaintiff-Appellee,

v                                       No. 127704

FREDERICK BRETON, Personal
Representative of the ESTATE OF

CURTIS J. BRETON, deceased, and
HB RESORT ENTERPRISES, INC., a Michigan
corporation, a/k/a EAGLES NEST,

        Defendants,

and

BEACH BAR, INC., a Michigan corporation,
a/k/a BEACH BAR,

        Defendant-Appellant.

_____

CORRIGAN, J.

A vehicle driven by an intoxicated driver collided with an oncoming vehicle carrying two young men on US-127 near Lansing, killing all three individuals. The issues on appeal in this dramshop action involve (1) the presumption of nonliability under the dramshop act (DSA), MCL 436.1801(8); and (2) the adequacy of proofs regarding the driver's alleged visible intoxication under MCL 436.1801(3).

MCL 436.1801(8) creates a rebuttable presumption of nonliability for all but the last retail licensee that serves alcohol to a visibly intoxicated person. This novel presumption operates to require that a plaintiff, when opposing a defendant that invokes this presumption, must show more than the prima facie case required under MCL 436.1801(3). A plaintiff rebuts this presumption by showing not only the evidence required for a prima facie case, but clear and convincing evidence. Because the Court of Appeals incorrectly held that plaintiffs satisfactorily rebutted

2

the presumption of nonliability, we reverse the judgment of the Court of Appeals on this issue.

We further hold that to establish "visible intoxication" under MCL 436.1801(3), a plaintiff must present evidence of actual visible intoxication. Because the Court of Appeals held that plaintiffs established their claim without such evidence, relying instead on suppositions drawn from blood alcohol tests, the visible intoxication of another person, and the like, we reverse its judgment and reinstate the trial court's grant of summary disposition for defendant Beach Bar, Inc.

## I. FACTS AND PROCEDURAL HISTORY

Plaintiffs, the personal representatives of the estates of Adam W. Kuenner and Lance N. Reed,[1] filed separate dramshop claims against defendant Beach Bar, Inc., alleging that Curtis J. Breton[2] was served alcohol at defendant's establishment. Plaintiffs contended that Breton was visibly intoxicated when he was served alcohol there, and his subsequent impaired driving resulted in the deaths of plaintiffs' decedents.

Breton had spent the day drinking with his friend, John Marsh. Around 7:30 p.m., they consumed two beers at the Beach Bar. Lindsay Mizerik, the server

---

[1] The personal representatives of the estates, James D. Kuenner and Lawrence Reed, are the plaintiffs in these actions.

[2] Although not a party to this appeal, Frederick Breton, the personal representative of the estate of the intoxicated driver, Curtis Breton, deceased, was also named as a defendant.

at defendant's establishment, had received training in identifying visibly intoxicated persons. She served Breton and did not observe him to exhibit slurred speech, an aggressive manner, a lack of coordination, or erratic behavior. She did not consider refusing him service.

Breton and Marsh next went to the Eagles Nest[3] where they split a pitcher of beer. There, they encountered their supervisor, Summit Township Fire Department Chief Carl Hendges, who did not think either man was intoxicated. Another witness at the Eagles Nest, Richard Potts,[4] who knew Breton and who himself owned a convenience store that sold alcoholic beverages, observed that Breton's eyes were not bloodshot or glassy and that he did not appear to be intoxicated. Similarly, Marsh did not notice any change in Breton's speech, in his ability to walk, or redness in his eyes over the course of the day.

Shortly before 10 p.m., Breton drove Marsh home. At approximately 10:11 p.m., Breton crossed the center line of US-127 at a high rate of speed. His vehicle collided head-on with a vehicle carrying plaintiffs' two decedents, taking the lives of all three men. An examination after the collision revealed that Breton's blood alcohol content was 0.215 grams per 100 milliliters of blood.

---

[3] Plaintiffs also included HB Resort Enterprises, Inc., which owns the Eagles Nest, as a defendant. HB Resort Enterprises, Inc., is not a party to this appeal.

[4] Robert Potts's wife, who accompanied him that evening, also did not observe any loud or unusual behavior at Breton's table.

Defendant, as the second-to-the-last establishment to serve Breton, sought summary disposition under MCR 2.116(C)(10). Defendant relied on the rebuttable presumption of nonliability available to all but the last serving establishment under § 801(8). Defendant argued that plaintiffs failed to rebut the presumption available under § 801(8) because they failed to show that Breton was visibly intoxicated. Plaintiffs responded that a factual issue remained regarding whether defendant's establishment was the last to serve alcohol to Breton and that, regardless, Breton was served alcohol when he was visibly intoxicated. Plaintiffs also offered the expert opinion reports of two toxicologists.

Both of those reports estimated the number of drinks that Breton had consumed and recited his age, weight, and the alcohol levels in his blood and urine after the collision. Given this amount of alcohol and Breton's physical makeup, the toxicologists opined that he must have been significantly impaired.[5] They listed several manifestations of impairment, such as disorientation and lack of coordination, and concluded that he must have exhibited some of these symptoms.

The trial court held that plaintiffs had shown Breton's visible intoxication by the experts' deductions from the data regarding how Breton must have appeared. The trial court concluded, however, that plaintiffs were required to offer more than circumstantial evidence from experts and so failed to rebut the

---

[5] Notably, one expert's opinion focused on Breton's hypothesized behavior as of and after his departure from defendant's establishment, rather than on assessing his behavior at the time that he was served alcohol there.

presumption of nonliability with "positive, unequivocal, strong and credible" evidence in light of *Krisher v Duff*, 331 Mich 699; 50 NW2d 332 (1951). Thus, the court granted summary disposition to defendant.

The Court of Appeals granted each plaintiff's application for leave to appeal, consolidated the appeals, reversed the judgment of the trial court, and remanded the cases to the trial court.[6] It concluded that the trial court had impermissibly heightened plaintiffs' burden of proof to overcome the presumption protecting the second-to-the-last bar. Plaintiffs' experts' testimony, predicated on Breton's physical build and the alcohol in his body at the time of the accident, and testimony about the level of intoxication of Marsh sufficed to create a genuine issue of material fact regarding whether Breton was visibly intoxicated when served at defendant's establishment. The Court of Appeals held that this evidence permitted plaintiffs to withstand summary disposition. We granted leave to appeal. 474 Mich 886 (2005).

## II.  STANDARD OF REVIEW

We review a grant or denial of summary disposition de novo. *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999). When ruling on a motion brought under MCR 2.116(C)(10), the trial court must consider the affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties in the light most favorable to the party opposing the motion. *Id*. at 120. "Where the

---

[6] 264 Mich App 363; 691 NW2d 779 (2004).

6

proffered evidence fails to establish a genuine issue regarding any material fact, the moving party is entitled to judgment as a matter of law." *Id*. Further, we review a question of statutory interpretation de novo. *Nastal v Henderson & Assoc Investigations, Inc*, 471 Mich 712, 720; 691 NW2d 1 (2005).

## III. ANALYSIS

By creating a remedy against retail liquor licensees for persons injured by intoxicated tortfeasors, the DSA abrogated the general common-law rule that no cause of action existed for the negligent selling or furnishing of alcohol to an able-bodied person. *Millross v Plum Hollow Golf Club*, 429 Mich 178, 183-184; 413 NW2d 17 (1987). The act provides a remedy for plaintiffs injured by a visibly intoxicated person, allowing suit to be brought against a retail establishment that unlawfully sells alcohol to a minor or a visibly intoxicated person, if the unlawful sale is a proximate cause of the injury. MCL 436.1801(3) provides:

> Except as otherwise provided in this section, an individual who suffers damage or who is personally injured by a minor or visibly intoxicated person by reason of the unlawful selling, giving, or furnishing of alcoholic liquor to the minor or visibly intoxicated person, if the unlawful sale is proven to be a proximate cause of the damage, injury, or death, or the spouse, child, parent, or guardian of that individual, shall have a right of action in his or her name against the person who by selling, giving, or furnishing the alcoholic liquor has caused or contributed to the intoxication of the person or who has caused or contributed to the damage, injury, or death. In an action pursuant to this section, the plaintiff shall have the right to recover actual damages in a sum of not less than $50.00 in each case in which the court or jury determines that intoxication was a proximate cause of the damage, injury, or death.

Although a plaintiff must establish the elements of § 801(3) with regard to each defendant in a dramshop claim, the Legislature also created a rebuttable presumption. This presumption affords an additional measure of protection for a retail licensee that was not the last licensee to serve alcohol to a visibly intoxicated person. MCL 436.1801(8) provides:

> There shall be a rebuttable presumption that a retail licensee, other than the retail licensee who last sold, gave, or furnished alcoholic liquor to the minor or the visibly intoxicated person, has not committed any act giving rise to a cause of action under subsection (3).

Thus, all establishments but the last to serve the person have the benefit of a rebuttable presumption that no unlawful service occurred. How to give meaning to this presumption is the central issue of this case. As indicated, the trial court concluded that the presumption imposed a heightened burden on plaintiffs, requiring them to establish Breton's visible intoxication at defendant's bar by "positive, unequivocal, strong and credible evidence." The Court of Appeals found, however, that the trial court erred because the statute did not expressly provide for such a heightened burden. 264 Mich App at 374-375. Further, it held that the general rule regarding rebuttable presumptions found in MRE 301[7]

---

[7] MRE 301 provides:

> In all civil actions and proceedings not otherwise provided for by statute or by these rules, a presumption imposes on the party against whom it is directed the burden of going forward with evidence to rebut or meet the presumption, but does not shift to such party the burden of proof in the sense of the risk of nonpersuasion,

(continued . . .)

8

controlled. The Court thus imposed the usual standard required to overcome a rebuttable presumption: competent and credible evidence. The Court of Appeals erred by failing to recognize that this general rule cannot apply to the separate and novel presumption of § 801(8). Plaintiffs already bear the burden of establishing a prima facie case against any defendant in a dramshop claim, including showing the element of serving alcohol to a visibly intoxicated person. Under MRE 301, demonstrating a prima facie case itself remains subject to the standard of competent and credible evidence. Accordingly, to merge the test for establishing the prima facie case with the test to rebut the presumption prevents defendant from receiving the protection that the Legislature granted in § 801(8).[8] Requiring the

_____

(. . . continued)
>   which remains throughout the trial upon the party on whom it was
>   originally cast.

[8] In *Wold Architects & Engineers v Strat*, 474 Mich 223, 234; 713 NW2d 750 (2006), we stated that nothing in the act at issue there showed an intent to abrogate the common law. We did not extend that analysis to conclude that the absence of language specifically abrogating the common law demonstrated that no abrogation occurred. Further, the dissent incorrectly asserts that the Legislature "strongly indicate[d]" an intent to incorporate a lower common-law standard to rebut the presumption. *Post* at 9. The dissent's position is inconsistent with the Legislature's purposeful differentiation between the last bar to serve a visibly intoxicated patron and a bar that served the patron earlier. Indeed, applying the dissent's standard, which would allow for rebutting the presumption by the same prima facie evidence that satisfies § 801(3), the presumption would have no force or effect. We cannot conclude that the legislative enactment of a rebuttable presumption favoring those bars that were not the last bar to serve a visibly intoxicated person "strongly indicates" a legislative intent to encompass a standard of proof that would render that presumption meaningless.

same evidence to make out a dramshop claim and to rebut an additional presumption is tantamount to no test at all.

Because we are precluded from construing § 801(8) as having no meaning,[9] some difference must exist between the proofs required under § 801(8) and those required under § 801(3). Thus, in a lawsuit against a retail licensee that has the benefit of the presumption, plaintiffs must not only make out a prima face case under § 801(3) (among other things, that the drinker was visibly intoxicated), but must also rebut with additional evidence the presumption available to second-to-the-last (and earlier) establishments under § 801(8). Because the Legislature is held to be aware of this state's law, we assume, with regard to the presumption, that the Legislature considered the hierarchy of evidentiary standards available in our law. In that hierarchy, the most rigorous standard of proof is "proof beyond a reasonable doubt"; the least rigorous is "proof by a preponderance of the evidence"; and between these is "proof by clear and convincing evidence." *In re Martin*, 450 Mich 204, 225-227; 538 NW2d 399 (1995). The standard of "proof beyond a reasonable doubt" is not applied in civil cases but is applied in criminal matters. *Id.* The "proof by a preponderance of the evidence" standard is the standard normally associated with civil matters and indeed is the standard utilized to assess the evidence under § 801(3). This leaves "proof by clear and convincing evidence" as the enhanced standard to rebut the statutory presumption under §

_____

[9] See *Sweatt v Dep't of Corrections*, 468 Mich 172, 183; 661 NW2d 201 (2003).

10

801(8). Thus, in these cases a plaintiff, in addition to making out a prima facie case proven by a preponderance of the evidence under § 801(3), must also, when a defendant is not the last establishment to serve the allegedly intoxicated person, present clear and convincing evidence to rebut and thus overcome the presumption of § 801(8). That standard, while not precisely articulated by the trial court, was essentially the standard it adopted.[10]  Accordingly, we affirm the trial court's ruling and reverse the judgment of the Court of Appeals in this regard.

As demonstrated by the dissent's interpretation, a lower threshold for rebutting the presumption would require a plaintiff only to show (1) that a retail licensee served alcohol to a patron (2) while the patron was visibly intoxicated. But a plaintiff must already demonstrate these same elements to make out a claim under § 801(3). Further, the Legislature expressly differentiated between the last retail licensee to sell, give, or furnish alcohol to a visibly intoxicated person and the prior retail licensees to do the same. The Legislature excepted the former class of licensees from the protection of the § 801(8) presumption but included the latter class of licensees in that protection. Failing to acknowledge the distinction between these licensees disregards the plain language of the statute. Accordingly, we give full effect to the language of the statute by recognizing the different

---

[10] See 2 McCormick, Evidence (5th ed, Practitioner Treatise Series), § 340, pp 425, 427 n 24, citing *Krisher*, *supra,* as applying the "clear and convincing evidence" standard.

burden necessitated when the Legislature granted a presumption to some retail licensees.

We next determine if plaintiffs' evidence sufficed to overcome the presumption. It did not, because the proofs presented could not even meet the competent and credible standard for rebutting the presumption to show service to a visibly intoxicated person.

This standard of "visible intoxication" focuses on the objective manifestations of intoxication. *Miller v Ochampaugh*, 191 Mich App 48, 59-60; 477 NW2d 105 (1991).[11] While circumstantial evidence may suffice to establish this element, it must be actual evidence of the *visible* intoxication of the allegedly intoxicated person.[12] Other circumstantial evidence, such as blood alcohol levels, time spent drinking, or the condition of other drinkers, cannot, as a predicate for

---

[11] See also SJI2d 75.02 ("A person is 'visibly intoxicated' when his or her intoxication would be apparent to an ordinary observer."). Indeed, even the dissent describes the importance of the statutory phrase "visibly intoxicated." See *post* at 11-15.

[12] See, e.g., *Dines v Henning*, 437 Mich 920 (1991), reversing the Court of Appeals judgment in that matter, 184 Mich App 534; 459 NW2d 305 (1990), and adopting the dissenting opinion of Judge Michael J. Kelly, 184 Mich App at 540-541. Although Judge Kelly stated that "[e]yewitness testimony of visible intoxication [was] not required to establish a dramshop claim," he further stated that "visible intoxication may be proven by circumstantial evidence and the inferences drawn therefrom." *Id*. Thus, permissible inferences must have some basis in objectively observable behavior. Moreover, Judge Kelly's opinion relied not only on evidence of the amount of alcohol consumed and expert testimony, but on evidence (1) that the visibly intoxicated person drove wildly and maniacally both to and from the bar and (2) that that person behaved in a "loud and boisterous" manner. *Id*. at 541.

expert testimony, alone demonstrate that a person was *visibly* intoxicated because it does not show what behavior, if any, the person *actually manifested* to a reasonable observer. These other indicia—amount consumed, blood alcohol content, and so forth—can, if otherwise admissible, reinforce the finding of visible intoxication, but they cannot substitute for showing visible intoxication in the first instance. While circumstantial evidence retains its value, such (and any other type of) evidence must demonstrate the elements required by § 801(3), including "visible intoxication."[13]

Plaintiffs here presented no evidence of Breton's visible intoxication at the time he was served at defendant's establishment in response to defendant's motion for summary disposition. The record reflects that all four eyewitnesses saw no signs that Breton was visibly intoxicated. Plaintiffs further relied on two expert toxicologists' expectations that Breton would have exhibited signs of intoxication. But reports discussing Breton's physical statistics and alcohol consumption, coupled with predictions of his impairment, offer only speculation about how alcohol consumption affected Breton that night. Expert post hoc analysis may demonstrate that Breton was *actually* intoxicated but does not establish that others witnessed his *visible* intoxication.[14] Consequently, no basis for a DSA claim

---

[13] In 1972, the Legislature amended the statute (then MCL 436.22) to modify "intoxicated person" by adding the term "visibly." 1972 PA 196; compare 1961 PA 224.

[14] Indeed, even employing, for the sake of argument, the dissent's proffered definition of "capable of being seen" for "visibly intoxicated," the expert

(continued . . .)

against defendant existed.  Because plaintiffs failed to establish a genuine issue of material fact that Breton was visibly intoxicated even under § 801(3), the trial court correctly granted summary disposition for defendant.

IV.  CONCLUSION

We conclude that the Court of Appeals erred by reversing the trial court's grant of summary disposition to defendant.  Plaintiffs failed to rebut the presumption of nonliability available to defendant under MCL 436.1801(8).  We further hold that expert testimony regarding Breton's projected visible intoxication lacked any basis in actually manifested signs of intoxication and, thus, did not create a genuine issue of material fact under MCL 436.1801(3).  Accordingly, we reverse the judgment of the Court of Appeals and reinstate the trial court's grant of summary disposition for defendant.

Maura D. Corrigan<br>
Clifford W. Taylor<br>
Elizabeth A. Weaver<br>
Robert P. Young, Jr.<br>
Stephen J. Markman

_____
(. . . continued)
testimony still falls short of that standard.  Plaintiffs' experts' reports demonstrated only their own expectation of Breton's visible intoxication, not that he actually was visibly intoxicated.

14

STATE OF MICHIGAN

SUPREME COURT


LAWRENCE REED, Personal
Representative of the ESTATE OF
LANCE NATHAN REED, deceased,

      Plaintiff-Appellee,

v                                       No.  127703

FREDERICK BRETON, Personal
Representative of the ESTATE OF
CURTIS JASON BRETON, deceased, and
HB RESORT ENTERPRISES, INC, a
Michigan corporation, a/k/a EAGLES
NEST,

      Defendants,

and

BEACH BAR, INC, a Michigan
corporation, a/k/a BEACH BAR,

      Defendant-Appellant.

_____

JAMES D. KUENNER, Personal
Representative of the ESTATE OF ADAM
W. KUENNER, deceased,

      Plaintiff-Appellee,

v                                       No.  127704

FREDERICK BRETON, Personal
Representative of the ESTATE OF
CURTIS J. BRETON, deceased, and HB
RESORT ENTERPRISES, INC, a

Michigan corporation, a/k/a EAGLES
NEST,

        Defendants.

and

BEACH BAR, INC, a Michigan
corporation, a/k/a BEACH BAR,

        Defendant-Appellant.

_____

KELLY, J. (*dissenting*).

We granted leave in these cases to address two questions. The first is what is the proper standard to rebut the statutory presumption in a dramshop case? MCL 436.1801(8) *et seq*. The second is what limitations did the Legislature intend, if any, on the type of evidence needed to show that a person was visibly intoxicated when served intoxicants by a dramshop? The majority holds that, to rebut the statutory presumption, a plaintiff must present clear and convincing evidence. It also holds that, to establish "visible intoxication" under the statute, a plaintiff must present actually manifested signs of intoxication. I disagree. The majority has erroneously given unintended meaning to the statute with respect to both issues. Hence, I must respectfully dissent.

UNDERLYING FACTS AND PROCEDURAL BACKGROUND

On April 20, 2001, at about 10:00 p.m., Curtis Breton drove his automobile while under the influence of more than 20 beers and crossed the center line of US-127 at more than 100 miles per hour. His automobile slammed into a vehicle

2

occupied by Adam Kuenner and Lance Reed, killing them and Breton and destroying both vehicles. At the time of the accident, Breton's blood alcohol level was 0.215 grams per 100 milliliters of blood.[1] Plaintiffs, the personal representatives of the estates of Kuenner and Reed, filed suit against the Beach Bar for negligently selling intoxicating liquor to Breton in violation of MCL 436.1801(3).

Deposition testimony indicated that Breton spent the day of the accident drinking with his friend John Marsh, a fellow firefighter. They started their binge in the morning at the Firehouse Pub, where they each consumed at least two to three beers. They continued it when another firefighter joined them after lunch. They purchased a 12-pack of beer and drank it while they repaired a collapsed boat dock at a family home. Each consumed at least two to three beers during the repair project.

About 4:45 p.m., Breton and Marsh went to the defendant Beach Bar where they split two pitchers of beer. On leaving the bar, they proceeded to Marsh's home and drank two beers each. They returned to the Beach Bar about a half an hour later and drank two more beers and split a pizza. At approximately 9:00 p.m. they left the bar. Marsh testified that he did not feel the effects of the alcohol until then. He also testified that, until they left the bar, Breton did not appear visibly intoxicated.

---

[1] Legal intoxication is statutorily defined as 0.08 grams per 100 milliliters of blood. MCL 257.625(1)(b).

They left the Beach Bar and went to the Eagle's Nest bar where they shared yet another pitcher of beer. At 9:50 p.m., Breton drove Marsh home. Concerned, Marsh asked Breton if he was "alright to drive." Breton responded that he was. However, he died about 20 minutes later when he drove into oncoming traffic on the highway, killing himself, Kuenner, and Reed.

Before the fatal accident, Breton had returned to the Beach Bar where he attempted to get a date with Lindsay Mizerik, the waitress who had served him earlier in the evening. He did not drink during this return visit. Mizerik testified at deposition that she was trained in discerning intoxication and that Breton displayed no signs of intoxication while he was at the Beach Bar before the accident. Several others who saw Breton that evening testified that he did not appear intoxicated.

After the close of discovery, defendant Beach Bar filed a motion for summary disposition based on MCL 436.1801(8). Defendant argued that it was not the last establishment to serve alcoholic beverages to Breton, thus entitling it to a rebuttable presumption against liability under MCL 436.1801(8). Defendant argued that plaintiffs could not overcome the statutory presumption because they had no evidence that Breton was "visibly intoxicated" when he was served at defendant's bar.

In response, plaintiffs presented circumstantial evidence, including the reports of two toxicologists. Reed's expert estimated that Breton consumed 24 to 25 beers in the nine-hour period before the accident. He opined that this

4

concentration of alcohol certainly affected Breton's central nervous system and certainly resulted in visible signs of intoxication at the time the Beach Bar served Breton.

The trial court granted summary disposition against both plaintiffs. In its opinion, it held that plaintiffs failed to present a genuine issue of material fact regarding the last location to serve alcohol to Breton. Hence, the Beach Bar was entitled to the statutory presumption of nonliability. The court then held that, to overcome the presumption, plaintiffs had to present "positive, unequivocal, strong and credible evidence" that Breton was visibly intoxicated when he was served at defendant's bar. The court stated that the testimony of the expert witnesses was circumstantial, which by its nature is not unequivocal, strong, and credible.

Plaintiffs appealed, and the Court of Appeals reversed in a published opinion per curiam, remanding the cases for trial on the merits. 264 Mich App 363; 691 NW2d 779 (2004). The panel held that plaintiffs needed to present only competent and credible evidence that it is more probable than not that Breton was visibly intoxicated when served at defendant's bar. It found that plaintiffs' expert testimony met this standard.

THE DRAMSHOP ACT

At common law, no cause of action was available against a dramshop for negligently serving alcohol to a visibly intoxicated person who thereafter caused injury to another. Our Legislature changed the common law when it enacted the dramshop act. The act allows someone injured by an intoxicated person to bring

5

suit against, among others, a retail establishment that served the person while he or she was visibly intoxicated. Specifically, MCL 436.1801(3) indicates in part:

> Except as otherwise provided in this section, an individual who suffers damage or who is personally injured by a minor or visibly intoxicated person by reason of the unlawful selling, giving, or furnishing of alcoholic liquor to the minor or visibly intoxicated person, if the unlawful sale is proven to be a proximate cause of the damage, injury, or death, or the spouse, child, parent, or guardian of that individual, shall have a right of action in his or her name against the person who by selling, giving, or furnishing the alcoholic liquor has caused or contributed to the intoxication of the person or who has caused or contributed to the damage, injury, or death.

The act also provides a presumption of nonliability for all retail licensees that are not the last retailer to furnish alcohol to a visibly intoxicated person. The presumption is set forth in MCL 436.1801(8):

> There shall be a rebuttable presumption that a retail licensee, other than the retail licensee who last sold, gave, or furnished alcoholic liquor to the minor or the visibly intoxicated person, has not committed any act giving rise to a cause of action under subsection (3).

The first question presented in this case is what is the proper standard to rebut the statutory presumption of nonliability in MCL 436.1801(8). Initially, it is necessary to review the law of presumptions. In most civil cases, a party must satisfy its burden of proof by a preponderance of the evidence. It is generally recognized that the burden of proof is composed of two parts: the burden of persuasion and the burden of going forward with the evidence, commonly referred to as the burden of production. The burden of production may shift several times during the trial, but the burden of persuasion generally remains with the party who

6

bears the risk of nonpersuasion. *Widmayer v Leonard*, 422 Mich 280, 290; 373 NW2d 538 (1985).

Presumptions generally affect the burden of production. MRE 301 explains:

> In all civil actions and proceedings not otherwise provided for by statute or by these rules, a presumption imposes on the party against whom it is directed the burden of going forward with evidence to rebut or meet the presumption, but does not shift to such party the burden of proof in the sense of the risk of nonpersuasion, which remains throughout the trial upon the party on whom it was originally cast.

A presumption is best described as a procedural device. The function of a rebuttable presumption is solely to place the burden of producing evidence on the party opposing the presumption. It allows the party relying on it to avoid a directed verdict. It also aids that party in obtaining a directed verdict if the opposing party fails to introduce evidence rebutting the presumption. *Widmayer, supra*; *Wojciechowski v Gen Motors Corp,* 151 Mich App 399; 390 NW2d 727 (1986). A presumption disappears when the burden of production is met. *Widmayer, supra* at 286. MRE 301 requires that the judge decide whether a presumption has been rebutted. *Widmayer, supra* at 288.

It is without contest that, normally, to cause a rebuttable presumption to disappear, the challenging party must produce credible evidence to the contrary. *Krisher v Duff,* 331 Mich 699, 705; 50 NW2d 332 (1951). *Krisher* states:

> It has been well settled in this State that the effect of a rebuttable presumption is to make out a prima facie case at the beginning of a trial. Having established the original prima facie

7

case, the presumption then casts the burden of proof on the opposite party. Presumptions cannot be weighed against other credible evidence, for they have no value as evidence unless no other credible evidence whatsoever is introduced in regard to the presumed fact. As a rule they disappear if and when credible evidence is introduced from which the facts may be found. [*Id.*][2]

THE REBUTTABLE PRESUMPTION IN MCL 436.1801(8)

The majority finds that "clear and convincing" proof should be required to rebut the presumption in MCL 436.1801(8). It concludes, in effect, that reading the statute as written would render the presumption meaningless or redundant. I disagree.

The interpretation offered by the majority contradicts well-established rules of statutory construction because it adds words to the statute that the Legislature did not put there. The words that the Court adds are, "The presumption may be overcome only by a showing of clear and convincing evidence to the contrary."

In interpreting statutory language, courts must determine and give effect to the intent of the Legislature. *In re MCI Telecom Complaint,* 460 Mich 396, 411; 596 NW2d 164 (1999). When ascertaining legislative intent, we look first at the words of the statute itself. *House Speaker v State Administrative Bd,* 441 Mich 547; 495 NW2d 539 (1993). There is no standard in MCL 436.1801(8) for

---

[2] The Court in *Krisher* increased the weight given to the statutory presumption that the owner of an automobile gave permission to drive it to the party causing an injury. The Court found that "policy factors operate to make this a stronger presumption than the ordinary rebuttable presumption." *Krisher, supra* at 707. The policy considerations present in *Krisher* do not apply in the instant case.

determining how the presumption may be rebutted. The Legislature is presumed to know the law. *Wold Architects & Engineers v Strat*, 474 Mich 223, 234; 713 NW2d 750 (2006), citing *Bennett v Weitz*, 220 Mich App 295, 299; 559 NW2d 354 (1996). Michigan law holds that a rebuttable presumption normally can be rebutted by credible evidence. *Krisher*, *supra.*

Hence, the majority creates a new "clear and convincing evidence" standard out of thin air in complete disregard of the text of MCL 436.1801 and of recognized rules of statutory interpretation. It offers no policy considerations to justify this action, as the Court did in *Krisher*.

Interestingly, the Legislature has shown that it is quite capable of providing a heightened burden for rebutting a presumption when it chooses to do so. For example, it inserted into MCL 570.1203(2) a presumption that payment has been made to a contractor for improvements. It then added that the presumption may be overcome "only by a showing of clear and convincing evidence to the contrary."

The lack of the same or a similar addition to MCL 436.1801 strongly indicates that the Legislature intended the courts to apply our general common-law standard to the presumption in that statute. We should not alter this policy choice by the Legislature. This year, the Court held that the absence of evidence of specific legislative intent to change the common law shows that the Legislature meant to leave the common law untouched. See *Wold, supra*. Nothing in the statutory text at issue indicates that the Legislature intended any standard other than our common-law standard to apply.

I acknowledge that, in reviewing a statute's language, "every word should be given meaning, and we should avoid a construction that would render any part of the statute surplusage or nugatory." *Wickens v Oakwood Healthcare Sys*, 465 Mich 53, 60; 631 NW2d 686 (2001), citing *Altman v Meridian Twp,* 439 Mich 623; 487 NW2d 155 (1992). In these cases, I interpret the rebuttable presumption of MCL 436.1801(8) to give it full force and effect. My interpretation is that the presumption existed on defendant's behalf but disappeared when defendant's motion for summary disposition was heard. This is because plaintiffs produced credible evidence that defendant served beer to Breton while he was visibly drunk.

Even if the standard were "clear and convincing," the presumption would have disappeared in these cases. However, I am convinced that the correct standard is "credible evidence," only. There is no valid legal justification to change the common-law standard or to manufacture a special enhanced standard for this statute. The Legislature chose not to do so, and no public policy reasons have been advanced to justify it. My interpretation renders the presumption neither surplusage nor nugatory.[3] And, unlike the interpretation of the majority, it

_____

[3] The majority justifies raising the standard to be used in rebutting the statutory presumption because otherwise, it reasons, the presumption would be meaningless. But this justification is misleading. The Court need do nothing to give meaning to the presumption. It stands on its own two feet without our help. What the majority is doing, in the name of preventing the presumption from becoming "meaningless," is giving it strength that the Legislature did not give it. It is judicially rewriting the statute. The majority's attack on my position offers no response to the fact that the majority is adding words and meaning to the statute that are not there. That is, of course, because no good response exists.

10

adds no new and higher standard without justification and contrary to the intent of the Legislature.

PROOF OF ACTUAL VISUAL INTOXICATION

The second issue is whether the Legislature intended to restrict the type of circumstantial evidence that qualifies as proof that the drunk was visibly intoxicated when served by the dramshop. The statute refers to the tortfeasor repeatedly as a "visibly intoxicated person." MCL 436.1801(3), (6), (7), (8), and (9). As explained later in this opinion, a retail licensee may be liable under the statute when it serves an alcoholic beverage to a visibly intoxicated person.

The act does not define "visibly intoxicated." It is a well-settled rule of statutory construction in this state that, unless otherwise defined by law, statutory words or phrases are given their plain and ordinary meaning. MCL 8.3a. When appropriate, this Court often refers to dictionary definitions to interpret statutory language. "Visibly" is the adverbial form of "visible." The principal definition of "visible" is "capable of being seen." *Random House Webster's College Dictionary* (1997).

This definition indicates that the Legislature did not intend that a plaintiff is limited to producing a witness who actually saw signs that the intoxicated person exhibited intoxication. The statute does not require "actually manifested signs of intoxication." Rather, a plaintiff may show that indicators of the intoxication in the person were capable of being seen, that someone viewing the intoxicated

11

person could have seen the indicators.[4]  Had the Legislature intended to require at least some evidence that a witness actually saw signs that the person was intoxicated, it could have written:

> There shall be a rebuttable presumption that a retail licensee, other than the retail licensee who last sold, gave, or furnished alcoholic liquor to the minor or person seen by an eyewitness to be visibly intoxicated, has not committed any act giving rise to a cause of action under subsection (3).

My rationale is supported not only by the actual language of the statute, but by case law as well.  In *Dines v Henning*,[5] this Court reversed the Court of Appeals judgment and adopted Judge Michael J. Kelly's dissenting opinion that stated, "Eyewitness testimony of visible intoxication is not required to establish a dramshop claim; visible intoxication may be proven by circumstantial evidence and the inferences drawn therefrom."[6] *Dines v Henning,* 184 Mich App 534, 540-541; 459 NW2d 305 (1990) (Kelly, J., *dissenting*).

---

[4] As the majority acknowledges (at its footnote 11 on page 12), the standard jury instructions define a "visibly intoxicated" person as one whose intoxication "would be apparent to an ordinary observer."  SJI2d 75.02.  Significantly, the jury instructions do not state, as the majority does, that the intoxication must "actually" have been seen by an ordinary observer.

[5] 437 Mich 920 (1991).

[6] Judge Kelly stated, and this Court adopted, the rule that eyewitness testimony is not essential.  The majority now apparently requires actual eyewitness testimony of signs of intoxication in order to sustain a dramshop action.  If a plaintiff's evidence  lacks "actually manifested signs of intoxication," the majority removes the case from the jury.  This has never been the law.  It represents a drastic departure from existing law and it defies a reasonable construction of the text of the dramshop act.

12

Judge Kelly based his decision on *Heyler v Dixon,* 160 Mich App 130; 408 NW2d 121 (1987). In that case, the Court of Appeals pointed out that the dramshop act was amended in 1972 to substitute "visibly intoxicated" for "intoxicated." *Id.* at 145. The Court noted that case law existing at the time required that the allegedly intoxicated person must be "visibly" intoxicated at the time of the sale. *Id.,* citing *Archer v Burton*, 91 Mich App 57; 282 NW2d 833 (1979); *McKnight v Carter*, 144 Mich App 623; 376 NW2d 170 (1985).

The *Heyler* Court then noted that the existing standard jury instructions defined a person as visibly intoxicated "when his or her intoxication would be apparent to an ordinary observer." SJI2d 75.02. The Court noted that the Court of Appeals has repeatedly held that claims brought under the dramshop act may be proven by circumstantial evidence and that, "if the combination of the circumstantial evidence and the permissible inferences drawn therefrom are sufficient to establish a prima facie case, a directed verdict is improper." *Heyler*, *supra* at 146. See *Villa v Golich*, 42 Mich App 86, 88; 201 NW2d 349 (1972); *Durbin v K-K-M Corp*, 54 Mich App 38, 56-57; 220 NW2d 110 (1974). The Court concluded by finding in that case that sufficient circumstantial evidence existed to render summary disposition improper. No limitations were read into the type of circumstantial evidence that is permissible.

In making its determination in *Heyler,* the Court of Appeals stated that a jury could conclude that someone was a "visibly intoxicated person" from evidence showing that (1) the person admitted that he drank one or two beers an

hour, (2) he stayed at the bar either 14 hours or nine hours, (3) he consumed somewhere between nine and 28 beers during his stay at the bar, (4) the accident occurred within minutes after the person left the bar, and (5) there was testimony from officers arriving at the scene of the accident that the person "'smelled highly'" of alcohol. *Heyler, supra* at 147. In this case, there was similar testimony about how long and approximately how much Breton drank. There was similar evidence that Breton caused the accident and that he was highly intoxicated at the time.

The majority misreads *Dines* to conclude that expert testimony predicated on circumstantial evidence is insufficient to establish that a person was visibly intoxicated. *Dines* specifically adopted the long line of Court of Appeals cases holding that circumstantial evidence, standing alone, is sufficient to establish and support a dramshop claim. The majority opinion does not rely on *Dines* as it asserts; in fact, it limits the holding by restricting the circumstantial evidence that is admissible to that which was actually seen by a witness.

In these cases, the circumstantial evidence on which the expert opinions were based sufficed by itself to rebut the statutory presumption and establish plaintiffs' prima facie case. In *Heyler,* circumstantial evidence was found to be sufficient even though, unlike in these cases, it was not supported by strong expert testimony.

Here, plaintiffs had evidence that Breton's consumption of 24 to 25 beers in a nine-hour period had to have affected his central nervous system and resulted in

14

visible signs of intoxication. While it is true that all of defendant's witnesses testified that Breton was not visibly intoxicated, that does not prevent the cases from going to the jury. It is not uncommon for a jury to disbelieve multiple eyewitnesses. See, e.g., *McKenzie v Taft Estate*, 434 Mich 858 (1990)(dissenting statement of Levin, J.).

The majority has erroneously changed the meaning this Court has given for the past 15 years to "visibly intoxicated person" in MCL 436.1801. Plaintiffs presented compelling circumstantial evidence and strong expert testimony that Breton was visibly intoxicated when defendant served him beer before the accident.

CONCLUSION

I find that the presumption of MCL 436.1801(8) can be rebutted by credible evidence. Credible evidence is the common-law standard that courts in Michigan have applied for years to rebuttable presumptions absent policy reasons or legislative language enhancing the standard. No policy reasons exist to enhance the standard applicable to MCL 436.1801. The majority has raised the standard without either policy reasons or statutory authorization to do so.

What has happened here is that the majority has taken upon itself to be helpful to the Legislature. The Legislature wrote a rebuttable presumption into the dramshop act, but failed to include a standard for rebuttal higher than the normal standard. The majority has reasoned that the Legislature must have intended a higher standard, so it has furnished one. However, especially given that our

15

Legislature has shown itself perfectly capable of supplying a higher standard itself, the Court should not rewrite the statute to its own liking. It is the Legislature's job to do that. My colleagues should willingly concede that the majority of legislators may not have been able to agree to give more teeth to the presumption by adding a higher rebuttal standard.

The majority has also increased the burden on an injured party to prove that a dramshop served intoxicants to a drunken patron. It has accomplished this by rewriting the statute to require actual signs of the intoxication, whereas, for decades, other circumstantial evidence has sufficed. The statute, by its terms, does not require a showing that someone testify to having actually seen signs that a drunk was intoxicated before the drunk was served at a bar.

It will now be more difficult for persons injured by a drunken driver to recover from a bar that served the drunk while that person was visibly intoxicated. The majority points to nothing in the dramshop act that suggests that it was the Legislature's intent to hinder, rather than facilitate, recovery from those serving drunks who injure others. This drastic change in the law defies both public policy and common sense.

Therefore I would affirm the decision of the Court of Appeals and remand the cases for trial.

Marilyn Kelly

Cavanagh, J., did not participate in the decision of these cases.

16